## No. 8705.

### CAMPBELL *v.* CREIGHTON ET AL.

1. PLEADINGS—*Issue Directed by the Court.* It is not material that the theory upon which the case was tried was formulated by the court, where the parties accept the formula, and the trial proceeds in accordance therewith.

A party who proceeds to trial, without objection, upon a construction of the pleadings by the court, will not be heard afterwards to say that the issue so litigated was not presented.

2. *Statutory Denial,* of what is presumptively or potentially within the party's knowledge raises no issue.

3. APPEAL AND ERROR—*What May be Assigned for Error.* Error cannot be assigned upon a proposition in the charge to which no objection was taken at the trial.

One who objects in the court below to any instruction upon a particular question, cannot complain in the court of review that no instruction upon this feature of the litigation was given.

4. JUDGMENT—*Construction of the Record.* The stock of a corporation, 56,000 shares, was issued to the president. In an action against him to restrain the sale of the stock, and for an accounting in respect of certain of the shares which he had already assumed to sell, judgment in damages was given against the president. Held that this judgment was not to be construed to determine the validity of the issue of the shares.

5. CORPORATIONS—*Presumption as to Knowledge of Director.*  A director is held to know, or be able to ascertain, what is alleged against the corporation in an action pending when he assumes office, and which is not determined for several months thereafter.

6. FRAUD—*Notice—Evidence.*  Knowledge that fraud perpetrated by another in a particular transaction, is charged by parties complaining thereof, may, with other circumstances, justify the inference of fraud in subsequent transactions by the party having such notice.

7. *Availing of the Fraud of Another*, with knowledge, is an adoption of the fraud.

8. EVIDENCE—*Admissions—By Silence.*  Failure of a party to testify warrants the inference that the charges made against him are true.

9. VERDICT—*Special Findings.*  Every presumption is to be indulged in support of a general verdict.  A special finding will prevail against it only where there is an irreconcilable antagonism between them.  If they can be harmonized on any hypothesis the judgment will follow the general findings.

*Error to the Court of Appeals.*

*En banc.*

Mr. E. C. STIMSON, Mr. J. F. SANFORD and Mr. J. W. SLEEPER, for plaintiff in error.

Mr. SAMUEL H. KINSLEY, Mr. MARTIN M. BURNS, Messrs. CHINN & STRICKLER, and Mr. J. A. RITTER, JR., for defendants in error.

Opinion by Mr. Justice Teller.

THIS cause comes before us on error to the Court of Appeals which reversed the judgment of the District Court, one member of the court dissenting.  27 Colo. App. 120.

The plaintiff in error was plaintiff below in an action for damages alleged to have been received because of the purchase of stock in the Manitou Bathing Company on fraudulent misrepresentations, of all of which the defendant is charged with having had notice when he bought a controlling interest in the company.

The complaint in this cause is very voluminous, setting up, among other things in addition to the charge of misrepresentations and fraud, that a suit begun by the plaintiff against defendant Creighton was abandoned by the plaintiff, upon an agreement upon the part of Creighton that he would organize a new company, build a bath-house, and cause to be issued to plaintiff stock in the new company to the amount of his holding in the old company.

The trial court held that such agreement was not proved, but that there was a cause of action stated for fraud, and that the evidence of negotiations concerning said agreement was competent, as throwing possible light upon the knowledge possessed by the defendants of the earlier transactions.

The evidence fairly establishes the following facts:

In June of 1906, Campbell, the plaintiff in error, who resided in Omaha, Nebraska, bought of Hitchcock, who was then the president of the bathing company, stock in said company to the amount of 11,200 shares of the par value of $1.00 each, for which he paid $11,200.00. The sale was made on a representation by Hitchcock that the shares were a part of a block of 54,000 shares, which were to be sold for the purpose of raising funds to erect and equip a bath-house on the property of the company at Manitou, Colorado. He further represented that the property was clear of encumbrances, and worth $50,000.00; that the remaining 56,000 shares of the capital stock had been issued to him in payment for real estate conveyed to the company. Sometime afterward Campbell moved to Manitou, and was shown by Hitchcock five pieces of real estate, which he stated belonged to the company. Thereafter Campbell bought 10,000 more shares at par. In October of said year, Campbell discovered from the county records that the real estate shown him did not belong to the company; that it had an option thereon at the price of $13,000.00; and that only a comparatively small amount had been paid on the property prior to his purchase of the stock. Some of Campbell's shares were issued to his wife, and in October,

1906, she began a suit in the District Court of El Paso County against Hitchcock, for an accounting as to the moneys received by him from the sale of stock, and for an injunction against the transfer of the 56,000 shares which had been issued to him. At the time this suit was begun, Creighton, one of the defendants in error, was the holder of 220 shares of the stock, which he soon after surrendered to the company.

A referee was appointed, and, upon the coming in of his report, in January, 1908, the court rendered judgment against Hitchcock for $24,308.59. In the meantime, that is, in August, 1907, Creighton became a director of the company, and was such when said judgment was rendered. In September, 1907, Creighton, as vice-president and treasurer of the company, in conjunction with the secretary thereof, issued a statement offering for sale 4,000 shares of treasury stock, in which statement it was asserted that not a share had been sold at less than par, and that at a conservative estimate the assets of the company, exclusive of the value of the soda springs, would equal the amount of the capital stock.

In March, 1908, the company made an assignment for the benefit of creditors, and the assets were then reported to be of the value of $15,305.10, and its liabilities $18,-593.12.

In September following, the property was sold by the assignee and bid in by Burns, one of the attorneys for Creighton. It appears, also, that both Burns and Creighton took assignments of claims against the company, and subsequently a part of these claims, at least, were allowed and paid by the assignee. Several claims against the company which had been assigned to Creighton, were by him, assigned to Burns.

A short time after the sale, the Manitou Springs Bathing Company was organized, the property purchased by Burns transferred to it, and Creighton became an officer of the new company. It is alleged that he owns all of the stock. Prior to the sale, Campbell had brought suit against the

company and its officers to prevent what he alleged to be the carrying out of a conspiracy to wreck the company and place its property in the hands of Creighton and others, to the damage of the other stock-holders in the original company, and it was this action which Campbell claims was abandoned on the agreement by Creighton to build a bathhouse, as above mentioned.

The original company was organized in March, 1905, and Creighton's connection with it, so far as this record shows, began soon afterward by the issue to him of 500 shares transferred by Hitchcock from an issue of 53,700 shares to him on March 22, 1905. The 500 shares were subsequently re-assigned to Hitchcock and by him transferred to the treasury of the company.

February 7, 1908, two certificates of stock, each for 28,000 shares, were issued to Creighton by assignment from the brother of Hitchcock.

The Court of Appeals held that the trial court erred in not directing a non-suit, on the ground that the breach of the contract alleged was the real cause of action, and that, it not being proved, the plaintiff had failed in his case. The record, however, discloses no objection made by the defendants to the ruling of the court that the complaint stated a cause of action for fraud, as it clearly did. After that ruling, the defendants proceeded to introduce evidence upon the issue of fraud and other matters. They cannot now be heard to say that no such issue was presented. *D. T. & Ft. W. R. R. Co. v. Shank*, 23 Colo. 456, 48 Pac. 681. The Court of Appeals was in error in stating that the trial proceeded over the protest of both of the parties. Neither party protested, or objected. We cannot, therefore, agree with the Court of Appeals that there was error in the respect named.

It was further held that the court erred in the concluding portion of the first instruction, which purported to be a statement at length of the issues tendered by the complaint, the error consisting, as stated, in the fact that there are no allegations in the complaint which justify the language used in the instruction. Inasmuch, however, as the objec-

tions to instruction number one do not include the objection discussed by the Court of Appeals, and hence the trial court's attention was not called to the misstatement, if it were such, error cannot be predicated upon it.

In the discussion of the instructions the opinion seems to overlook or misconceive the theory upon which the cause was tried. It is not material that this theory was formulated by the trial court, since both parties accepted it, and the trial proceeded in accordance with it. The theory on which the case was tried appears to be that Hitchcock, a former president of the company, had induced the plaintiff by misrepresentations to purchase a large amount of the stock of the Bath Company; that the stock so purchased had been rendered of little value by the issue of 56,000 shares of the treasury stock to said Hitchcock, without any payment to the company therefor; and that this stock had been acquired by defendant Creighton, with full knowledge that it had been so issued, and with the knowledge, also, of the misrepresentations made by Hitchcock to plaintiff. Also, that Creighton had caused the company to make an assignment and that on a sale of the property by the assignee it was purchased in Creighton's interest, and transferred to a new company of which he was the owner. These matters were all alleged in the complaint, which also charged that Creighton secured the assets by turning in to the assignee claims against the estate, some of which were fraudulent, and all of which he purchased for much less than their face value.

The Court of Appeals found error also in the seventh instruction. As to this, it may be said again that the plaintiff in error could take no advantage of the error, if one was committed, because the record shows no objection to the instruction. If it is wrong, as the Court of Appeals found, it must be presumed that the trial court would have corrected it if timely objection had been made.

The court held also that there was error in instruction nine, in that the jury were told, "that if they believed defendant Creighton claimed to be the owner of said 56,000

shares of stock of the Manitou Bathing Company, issued to Hitchcock, under certificates one and two, and that at the time of the transfer to Creighton of said shares he knew that the stock had not been paid for by said Hitchcock, and also knew, when he purchased the same, of the alleged fraudulent misrepresentations made to, and perpetrated upon, the plaintiff by said Hitchcock and the Manitou Bathing Company, such claim of ownership by Creighton would be evidence of fraud."

The objection made is that there was no testimony showing that the stock had not been paid for, or that if it had not, Creighton knew of the fact. This ground of objection is sustained by the Court of Appeals, it finding that the evidence shows that another than Hitchcock held the stock, by assignment, when Creighton was elected director by the use of such stock; and, further, that in another suit between the same parties, or their privies, and in which one of the issues was that said 56,000 shares was invalid, because not paid for, a judgment was rendered against Hitchcock, on an accounting for the stock, which judgment did not purport to invalidate the original issue, nor the subsequent assignment of said stock. The court concluded that it must be presumed that the money judgment settled all issues, and left the stock outstanding valid, at least to the extent that such assignees had the right to vote the stock. It was therefore held error to submit the question to the jury.

The record shows that in the suit to which reference is made, a temporary injunction was issued against the transfer of these shares. The answer of Hitchcock alleged a transfer of the shares to his brother before he knew of the injunction. The court appointed a referee and ordered an accounting as to the 54,000 shares of treasury stock, which, with the 56,000 in question, made up the whole capital stock of the company. In the order of reference, all other issues were continued until the report of the referee could be made. Upon such report, the court rendered judgment against Hitchcock for $24,308.59, without any adjudication

concerning the 56,000 shares, neither the assignee of the shares, nor Creighton being defendants. Inasmuch as that suit was to compel Hitchcock to account for the 54,000 shares which he had assumed to sell for the company, it is difficult to understand why it should be presumed that the validity of the 56,000 shares was determined. The injunction as to their transfer had no necessary connection with the accounting, or the money judgment.

There was evidence in the case from which the jury might conclude that Creighton knew of the fraud and the non-payment of the shares, and the instruction was proper, and even necessary. This will appear from a review of the evidence on this point.

In October, 1906, plaintiff's wife, as a stock-holder, brought suit against Hitchcock for an accounting, and the complaint in this case alleges that in her complaint in that case the fraudulent acts of Hitchcock in the sale of stock to plaintiff were fully set forth.

In August, 1907, Creighton became a director of the company, and was such director when judgment was rendered in Mrs. Campbell's suit in January, 1908. He ought, therefore, to be held to have known, or to have been able to ascertain, whether or not the complaint did, as is alleged, set out the fraud of Hitchcock. The statutory denial of a matter which he is presumed to know, or could have known, raised no issue on that point.

Counsel urge that, at the most, it can only be said that Creighton knew that plaintiff charged fraud, not that it had been committed. But the knowledge that it was charged, may, with other circumstances in evidence, be sufficient to justify the inference that he acted in fraud of the plaintiff's rights in the subsequent actions.

In September, 1907, Creighton, as vice-president and treasurer of the company, issued the statement above mentioned, in which it was asserted that not a share had been sold at less than par, and that the assets of the company, would equal the amount of the capital stock. We cannot suppose that he made that statement without investigating

the company's affairs, and if he did that he must have known about the suit, and of the charges of fraud.

This, it will be observed, was while the suit against Hitchcock was pending, in which he was found not to have accounted for $24,308.59 of the proceeds of the sale of the 54,000 shares of treasury stock, and but six months before the assignment, when the assets of the company were reported to be of the value of $15,305.10, and its liabilities $18,593.12.

There is no record of any payment on the 56,000 shares; and as the assets were of far less value than the payments shown to have been made on the 54,000 shares, there is nothing in the record which indicates that payment had been made therefor.

If they were not paid for, it might be fairly asked how could the vice-president of the company, who had issued the statement above mentioned, be ignorant of the fact. If they were paid for whence came the 4,000 shares of treasury stock which he offered for sale?

The circumstances were such as the jury was entitled to consider as bearing on the defendant's knowledge and good faith. It is not, of course, denied that, if the defendant availed himself of the benefit of the fraud on plaintiff, with knowledge of it, he is held to adopt the fraud. The instruction was therefore not prejudicial to defendant, since it left the question of fraud and defendant's knowledge of it to the jury.

It is to be noted, also, that neither defendant Creighton, nor any other director of the newly organized company, testified in behalf of the defense. If Creighton had no knowledge of the fraud, it would have been an easy matter for him so to testify.

"When a party refuses to produce evidence in his possession or under his control, the presumption is that the testimony, if given, or the evidence, if produced, would be unfavorable to him." *Stock Exchange v. Board of Trade*, 196 Ill. 407, 63 N. E. 744.

"There are circumstances under which a failure to deny

is equivalent to a positive admission." *U. P. Ry. Co. v. Hepner,* 3 Colo. App. 318, 33 Pac. 73.

It is further held that the court committed fatal error "in that it did not give the proper measure or any measure of damages." The record shows no request for instruction upon that point, but does show that the defendants objected to any instruction on damages, because, it was insisted, no ground of damages had been established. Under that state of the record, we do not see how the parties taking that position can now allege error on the failure to give an instruction as to the measure of damages. *Mining & Milling Co. v. Prentice,* 25 Colo. 4, 52 Pac. 210.

The Court of Appeals further finds that the answer to a special interrogatory shows that the jury considered the negotiations for a settlement for purposes other than that for which evidence relating thereto was admitted, and that the verdict was based on such negotiations and not on the alleged fraud.

The interrogatory required the jury to say how the plaintiff was damaged by the "acts and doings" of the defendants or either of them.

The answer was:

"Plaintiff Campbell was damaged by relying on representations made to him by Creighton and J. K. Vanatta looking to an equitable settlement of the Manitou Bathing Company and refrained from presenting or pressing his claims against said company in court."

This clearly presupposes that plaintiff had a valid claim for damages for the fraud, else he could lose nothing by failing to press it. It is not irreconcilable with the verdict, and does not contradict it. The rule is that "every presumption and intendment is to be indulged in favor of a general verdict, and recourse may be had to the issues as made by the pleadings, and if, by any possible competent evidence that might be produced thereunder, the apparent inconsistency can be overcome, it may be disregarded, and the general verdict permitted to stand." *Drake v. Justice G. M. Co.,* 32 Colo. 259, 75 Pac. 912.

In *D. & R. G. R. R. Co. v. Bedell,* 11 Colo. App. 39, 54 Pac. 280, the court said:

"A special finding will prevail against the general verdict only when it clearly appears upon the face of the record that there is irreconcilable antagonism between them; and if they can be harmonized upon any hypothesis, the judgment will follow the general verdict."

This rule is supported by a mass of authority both state and federal. 38 Cyc. 1927.

This answer does not exclude the conclusion that the jury found that the plaintiff was damaged by other acts of the defendants than those mentioned.

It does not, therefore, overthrow the verdict.

We have now considered the principal errors assigned, and on which the Court of Appeals' judgment was based, some of which are, for reasons above stated, not properly before us, and we are unable to agree with the conclusion announced by that court.

The case was fairly tried, the issues submitted to the jury under proper instructions, and we cannot say that there is not sufficient evidence to sustain the verdict.

The judgment of the Court of Appeals is reversed, and the judgment of the District Court affirmed. The cause is remanded to the District Court for further proceedings in harmony herewith.

Garrigues, J., dissenting.

The Court of Appeals decision holds that the action is based upon contract, as alleged in paragraph 6 of the complaint; that the remainder of the complaint simply pleads matters of inducement that led to the making of the contract; that after plaintiff had introduced his evidence to support the cause of action based upon contract, and matters of inducement leading to the making of the agreement, and rested, defendant moved for a non-suit, whereupon the trial court held that plaintiff had failed to prove the contract pleaded, but denied the motion for a non-suit, and over the protest of both parties converted the case into a cause of action founded upon fraud and deceit based

upon the matters pleaded by way of inducement, and required the parties to proceed to trial, without their consent, upon a cause of action based upon fraud and deceit; that the court after holding that the contract had not been proven, to be consistent, should have sustained the motion for a non-suit; but that the trial court was in error in holding that there was no evidence to support the cause of action based upon contract, and should have submitted that issue to the jury; that the District Court in converting a cause of action based upon contract into an action based upon fraud and deceit, without the consent of all the parties, committed error, and remanded the case with directions to try the cause of action pleaded in paragraph 6 of the complaint.

I think the holding and judgment of the Court of Appeals are correct and should be affirmed.