## The Denver, Texas & Fort Worth Railroad Company v. Smock, Administratrix.

1. Pleading.
A complaint by a brakeman against a railroad company for damages sustained by reason of defective appliances for coupling cars which sets out that the plaintiff had no knowledge of the defects that caused the injury is not, because of failing to show that he could not have acquired such knowledge by the exercise of ordinary care and diligence, obnoxious to a general demurrer.

2. Trial—Presence of Plaintiff.
A plaintiff has the right to be present at the trial, notwithstanding his personal appearance by reason of the injuries complained of and disease may be such as to excite sympathy.

3. Evidence—Experts.
It is not error to sustain an objection to a question calling for an opinion by a witness who was neither introduced nor qualified as an expert.

4. Same.
When by the rules of a railroad company a brakeman is required to examine cars and report defects he may discover to the conductor and he performs that duty, it does not lie with the company to dispute his qualification to testify as an expert concerning defects in a car so examined and reported by him.

5. Objections.
Generally, the overruling of an objection to testimony will not be reviewed unless the record shows that the grounds of objection were fairly stated to the trial court.

6. Nonsuit—Waiver.
The objection that the court below erred in denying a motion for nonsuit is waived by proceeding with the trial and introducing evidence in support of the defense.

7. Pleading—Contributory Negligence.
It is not always necessary that contributory negligence be specially pleaded in the answer. If the pleadings taken together raise the issue, although irregularly, evidence touching the matter is admissible.

8. Same—Waiver.
If contributory negligence be treated by the parties as one of the issues at the trial and they introduce evidence upon that question without objection, irregularity in the manner by which the issue was raised by the pleadings will upon review be regarded as waived.

9. RAILROADS—EMPLOYER AND EMPLOYÉ—DANGER SIGNALS.

As between a railroad company pulling a "foreign car" and an employé, it is the duty of the former to exercise reasonable precaution to see that the car is in proper repair. If the company has been notified of the defective condition of the car so recently as not to have time to make the necessary repairs, it should place a sign on or near the car warning employés of the dangerous condition.

*Error to the District Court of El Paso County.*

ACTION for damages for personal injuries received by plaintiff, Charles Smock, while in the employ of the defendant, The Denver, Texas & Fort Worth Railroad Company. The amended complaint alleges that the injuries were received by plaintiff while acting in the line of his duties as an employé of the defendant company on or about the 25th day of October, 1889; that plaintiff was at the time an express messenger, baggage master and brakeman upon a stub train running between the city of Colorado Springs and Manitou Junction, in El Paso county, Colorado; and alleges that the accident occurred without fault or negligence on his part; avers that the same was caused by a defective drawhead upon a car which plaintiff was required to couple, and contains the following further allegation: "Of which said defective condition on and prior to said date, the plaintiff, although he used due care and diligence to obtain the same, had no knowledge; but the defendant had knowledge of such defects, yet in disregard of its duty in that behalf, said defendant failed, refused and neglected to place, keep and maintain the said cars in good repair."

The injury received by plaintiff is alleged as follows: "But when the cars were backed together for coupling, by reason of the defective condition of the drawheads on one of the cars, the same passed the other as the cars came together, but in passing came in contact with the edge, breaking a piece of iron from one of such drawheads, which piece of iron struck the plaintiff in the right eye with great force, thereby totally destroying the sight thereof, and causing a permanent

injury to plaintiff's left eye, and greatly undermining his physical strength and permanently injuring him."

The account of the accident comes almost entirely from the plaintiff himself, there being no other eyewitness. He states that the train pulled into Manitou Junction at 10:45 A. M. upon the day of the accident, and ran on to the main track, and then backed down upon the switch, upon which were standing eight or nine flat and box cars, Smock being at the time on the top of the rear car of the train. The first car of this line of cars standing on the switch was a flat car loaded with lumber, marked " L. W. 1146 "—"L. W." standing for " Louisiana Western Railroad." It was part of Smock's duty to make this coupling, and for the time being the movements of the engineer were directed by signals from him. As the train approached car No. 1146, Smock signalled to the conductor to go slow, and climbed down from the top of the car at the further end from the place where the coupling was to be made, and running ahead on the right hand side, the train at the time moving a little faster than a walk, he stepped in between the cars, and observing that the link on the moving car was not going to enter the drawhead of the car which was standing still, and knowing that the coupling could not be made, he started to get out from between the cars, and just then something struck him in the eye. Upon being struck he fell to his knees. The engineer, observing that something was the matter, reversed the engine, and separated the cars. Smock then passed to the station between the two cars which he had been trying to couple, and as he passed says he noticed that the drawbar of the L. W. car was a small one, and that there was a good deal of play for it between the draft timbers.

The evidence shows that the substance which struck Smock in the eye was a piece of metal, a little larger than an ordinary pin head; but this penetrated the eye so that it ran out and caused the loss of his eye. A trial to a jury resulted in a verdict and judgment for plaintiff for the sum of $5,000.

To reverse this judgment the cause is brought here by writ of error.

Messrs. TELLER, ORAHOOD & MORGAN, Mr. H. W. HOB-SON and Mr. E. E. WHITTED, for plaintiff in error.

Mr. J. K. GOUDY, Mr. FRED. A. SABIN and Mr. CALVIN E. REED, for defendant in error.

CHIEF JUSTICE HAYT delivered the opinion of the court.

There are a large number of assignments of error in this case, but they may all be considered under a few heads.  By the first assignment of error argued, it is stated that the complaint does not state facts sufficient to constitute a cause of action.  A demurrer to the complaint was filed and over-ruled, and thereupon the defendant answered.  The complaint alleges the defective condition of the car ; the injury complained of, and that plaintiff was, at the time, in the discharge of his duty, exercising due care and skill.  Appellant contends that " although it is set forth in the complaint that plaintiff had no knowledge of the alleged defects in the car, it is nowhere alleged that he could not have obtained this knowledge by the use of ordinary care and diligence."  A defect in a complaint which renders it liable to a demurrer, is one that appears upon the face of the complaint.  If the plaintiff could have obtained this knowledge, it is not apparent upon the face of this complaint, and the demurrer, which is general, was properly overruled.  *Wilson et al. v. Denver, South Park & Pacific Railroad Company*, 7 Colo. 101.

The next assignments of error argued are numbered seven and eight.  By these it is claimed that the defendant was pre-judiced by the statements made by plaintiff's attorney in opening the case to the jury.  In support of these assignments counsel say, in argument: " Present in court is the plaintiff himself — a most pitiful looking object ; one eye cruelly gouged from his head, and his whole frame racked with the ravages of consumption.  Present with him were his wife

and several small children.   Then, at the very outset of the
case, the plaintiff's attorney proceeds to fill the minds of the
jury with a mass of detail."   It is unnecessary to notice this
assignment of error further than to say that the plaintiff had
a right to be present in court at the trial, and the fact that
he was a pitiful looking object certainly did not deprive him
of this right, and there is no rule of law which made it obli-
gatory upon the court to exclude his wife and children from
the court room.   In so far as the opening statement of the
attorney is concerned, we find nothing in the record to justify
the criticism of counsel.

Counsel complain because so much time was taken up by
proofs with reference to the bad condition of the drawheads
upon the L. W. car, and similar matters.   He says from this
it must have appeared clear to the jury that the court held
the condition of the apparatus to be the direct, immediate
cause of the injury.   We think this evidence was competent
under the issues, and there is nothing in the record to show
that the court expressed any opinion as to the cause of the
accident.   Counsel complains because, upon plaintiff's objec-
tion, the conductor was not allowed to testify as to whether
in his opinion the scratch which he saw upon the drawbar of
the L. W. car, after the accident, was made by the link.
This question was asked upon cross-examination, and was
not in response to anything brought out in the examination
in chief, and the witness was not introduced as, and did not
qualify as, an expert in the case; hence, the objection was
properly sustained.

There was no error in allowing the witness, Frank Kelly,
to testify as an expert.   It is true that Kelly was only a
brakeman, but he had been railroading for ten years, brak-
ing for five years, and switching much of the time.   He had
examined this particular car alleged to be defective before
the accident, and had reported its defective condition to the
conductor, as he was required to do by the rules of the com-
pany.   This being part of his duty as brakeman, we do not
think it lies with the company to dispute his qualification in

respect to the very duty which he was entrusted by it to perform. Aside from this, no ground for the objection was stated; and, as a general rule, an objection will not be considered upon review unless the record shows that the grounds of such objections were fairly presented to the trial court. *Ward v. Wilms*, 16 Colo. 86.

There was no error in overruling the motion for a nonsuit. Plaintiff had then introduced evidence upon every material matter necessary to warrant a recovery. This objection was, also, waived by the defendant proceeding with the trial and offering evidence in support of its defense. *Union Pacific Ry. Co. v. Daniels*, 152 U. S. 684; *Lord v. Pueblo Smelting & Refining Co.*, 12 Colo. 390.

It is contended that plaintiff was guilty of contributory negligence in failing to obey the rules of the company, and this raises the most serious question in the case. The plaintiff claims that no evidence of contributory negligence is admissible under the pleadings. While the defense of contributory negligence must be established by a preponderance of the evidence, it does not for this reason necessarily follow that it must be specially pleaded in the answer. It is sufficient in this respect if the pleadings, taken together, raise this issue. 2 Thompson on Negligence, 1253; *Lord v. Pueblo Smelting & Refining Co.*, supra.

The allegation of the complaint is, " That on said 25th day of October, 1889, the plaintiff, without any fault or negligence on his part, while, as heretofore stated, in the employ of said defendant, etc." The answer is a general denial of each and every allegation of this amended complaint. While such a denial of a negative is objectionable, it must be held sufficient unless objection thereto is made in the trial court. In this case the parties treated this as one of the issues to be tried and submitted evidence upon the same without objection upon the proofs, thereby waiving all objections to the form of the answer. The contributory negligence charged against the plaintiff is based particularly upon his alleged failure to observe the following rules of the company,

which were in force at the time of the accident, and had been in force for a long time prior thereto, and of which the plaintiff admits he had knowledge:

"Drawheads, drawbars and coupling apparatus must be examined before coupling is made, and if there is anything that is dangerous the coupling must not be made, but the fact reported to the proper officers."

"Rule 247. Inasmuch as the coupling apparatus of cars is not uniform in style, size or strength, and as dead woods and drawbars do not always have the same projections and other causes render it dangerous to expose the hands, arms or persons of those engaged in coupling cars, all employés will be expected to use the utmost care in coupling or uncoupling cars or engines to guard against personal injury; they must be particular to notice the speed of the cars while moving, and if at a dangerous rate, no attempt must be made to couple by getting between them. It is dangerous to couple or attempt to place links, pins or drawbars while cars are in motion, and it is positively forbidden."

Of rule 247 it is to be observed that after calling attention to the lack of uniformity in style, size, etc., of dead woods and drawbars of cars, and to the danger of exposing the hands, arms or persons of those engaged in coupling cars, it requires the utmost care in coupling or uncoupling cars, and directs employés to notice in particular the speed of the cars, and if moving at a dangerous rate, they are not to attempt to couple them, but it leaves the question of what is a dangerous rate of speed to be determined by the employé. It calls attention to the fact that it is dangerous to uncouple cars or to attempt to place links, pins or drawbars in cars while in motion, this being positively forbidden; but as no attempt was made to do this in this case, it need not be further considered.

We think there is little, if any, evidence which shows or tends to show that plaintiff violated any part of this rule, and, in any event, the verdict of the jury is conclusive in his favor in this respect. It is insisted, however, that he was guilty of contributory negligence in failing to examine the cars before coupling. The plaintiff introduced evidence for the purpose

of showing that this rule was habitually disregarded by employés, with knowledge and acquiescence on the part of the officers of the company. It is claimed that for this reason the rule was abrogated, and of no force and effect, and many authorities are cited in support of this proposition. The defendant introduced some evidence to show that the company's orders were that the rules must be strictly enforced. If this was a material issue in the case, it was properly submitted to the jury under the instructions. Aside from this, we are of the opinion that the appellee is not chargeable with contributory negligence for any violation of this rule, for the reason that the uncontradicted evidence shows that immediately prior to the accident he did, in fact, ascertain that the coupling could not be made, and he had desisted from attempting to make the coupling before the cars came together, and detached the sliver of iron which destroyed his eye.

The facts in this case are quite different from those in the case of *Karrer v. The D., G. H. & M. Ry. Co.*, 76 Mich. 400, and similar cases cited by counsel, as in those cases the injury complained of resulted from the attempt of the employé to make the coupling when he should have noticed the defect complained of, as it was apparent upon the slightest examination.

It is true, as stated by counsel, that the business or occupation of railroading is one extremely dangerous in its character, and one which requires the utmost care and diligence on the part of all engaged therein, to prevent accident; and it is also true, that employés must be held to have assumed the ordinary dangers incident to the employment; and to warrant a recovery the employé must himself be free from contributory negligence. But in this case the injured party having at the moment of the accident desisted from all attempts to make the coupling, he cannot be properly chargeable with contributory negligence. The evidence shows that the accident was caused by the drawhead on the L. W. car being out of repair, and it is no defense in such a case to show that the employé might have been injured in the same manner if the appliances had been in good repair.

Appellant contends that this being a foreign car, recently turned over to defendant company, it was not responsible for the condition of the car; but there is no evidence in the record that this was a foreign car, save the inference from the letters "L. W." on the car, and the testimony that this meant "Louisiana Western." Moreover, if the car was a foreign car, it was still the duty of the defendant company to exercise reasonable precaution to see that it was in proper repair. It appears in this case that the company had actual notice of the condition of the car several hours before the accident, and while this notice was, perhaps, not sufficient to enable it to repair the car, it was amply sufficient for the company to have placed a notice or sign upon or near the car, warning its employés of its dangerous condition. The evidence shows that the defective condition of the car was unknown to plaintiff, and that it was not discovered by him until the very instant of the accident. In these circumstances he had some right to assume that the car was reasonably safe, and that he would not be exposed to danger through the negligence of the company. *A., T. & S. F. Ry. Co. v. Penfold*, 45 Pac. Rep. 574; *Ry. Co. v. Barber*, 44 Kan. 612; *A., T. & S. F. Ry. Co. v. Wagner*, 33 Kan. 660; *Union Pacific Ry. Co. v. Daniels*, *supra*.

Counsel make some complaint of the instructions, although they concede that in the main they are correct. No proper objection or exception to the instructions were interposed in the trial court, and for this reason the judgment cannot be reversed on account of the instructions. We have, however, in this case carefully examined the charge of the court, and find that it is more favorable to the defendant company than the law as herein stated will warrant.

Questions of negligence and contributory negligence are usually questions to be determined by the jury. These questions having been submitted to the jury under instructions very favorable to the defendant, it is in no position to complain, and the judgment of the district court must be affirmed.

*Affirmed.*