No. 19,470.

JOHANNES APPELHANS, ET AL. *v.*
CAROL KIRKWOOD, A MINOR, ETC.
(365 P. [2d] 233)

Decided October 2, 1961.

Mr. John C. Marsh, for plaintiffs in error.

Mr. Ray Bengert, Messrs. Yegge, Hall and Shulenburg, Mr. James L. Treece, for defendants in error.

*In Department.*

Opinion by Mr. Justice Doyle.

The parties will be referred to as they appeared in the trial court where plaintiffs in error were defendants and defendant in error was plaintiff. Throughout the opinion, when the word "defendant" is used alone it refers to the son, Johannes Appelhans. Defendants seek review of a judgment based on a jury verdict in favor of plaintiff in the amount of $10,000. Plaintiff was a passenger in a vehicle being driven by defendant and was injured when the automobile collided with a post on the Valley Highway.

The collision occurred on May 13, 1959, some time between 12:30 A.M. and 1:30 A.M. Prior to the collision plaintiff and defendant, in company with other young people, had been driving around Denver drinking beer. They made several stops including one at the park and one at a pizza restaurant. Three of the party had been taken home prior to the happening of the accident.

A full case of beer, supposedly of the 3.2% kind, had been purchased early in the evening and the defendant-driver was shown by the evidence to have drunk at least five or possibly more cans of beer. It also appeared that the defendant knew that the brakes on his vehicle were defective. Immediately prior to the collision, defendant had been driving in a reckless manner on the Valley Highway. He was weaving back and forth, and had previously driven through several red lights and stop signs and had traveled at speeds as high as 60 miles per hour notwithstanding the defective brakes.

While the car was being driven southeast on the Valley Highway and at a high speed, defendant, according to the evidence, had been talking to the person next to him and had been listening to the radio. He attempted to turn the vehicle onto what he believed was an access road to East Evans. It turned out that this was a frontage turn-off, and when he attempted to stop suddenly, the defective brakes failed to take hold and the vehicle struck the post at a high speed. Plaintiff was injured quite seriously. She suffered shock and sustained fractured vertebrae, a deep puncture wound in her left leg in addition to lacerations and contusions.

In their answer, defendants affirmatively pleaded contributory negligence and assumption of risk. The trial court granted plaintiff's motion to strike the defense of contributory negligence. The cause was submitted to the jury pursuant to the guest statute and the jury found for the plaintiff as indicated above.

In cross examining plaintiff at the trial, defendants' counsel questioned her concerning a pretrial discovery deposition which she had given. Counsel for plaintiff objected to the particular form of the question and it then appeared that the original of the plaintiff's deposition had been submitted to her counsel for examination, correction and signing. She made certain corrections, but had not signed it and her counsel had not returned it to the reporter. The reporter had failed to follow up

and as a consequence it had not been certified by the reporter-notary and had not been filed as required by Rule 30 (f). In view of this, the court ordered the deposition suppressed on the ground that it did not conform to the rules of civil procedure and denied the defendants' offer of the document into evidence notwithstanding plaintiff's counsel's consent to it being received in its unsigned and uncertified form, provided it was not shown to the jury.

No effort was made by defendants' counsel to lay a foundation for impeachment after the first question was objected to. Counsel for defendant apparently was content to stand on the record as made rather than to make further effort to show prior inconsistent statements on the part of the plaintiff. Examination of plaintiff's testimony at the trial reveals that it was vague and uncertain in all respects. Plaintiff was not able to describe what had occurred early in the evening prior to the accident and there was much inconsistency about the number of stops that had been made during the evening and where they had occurred.

Other occurrences at the trial which assumed some importance in connection with this review include questions to defendant as to his past driving record and questions propounded to his father concerning whether the father had held a public liability insurance policy.

In seeking a reversal, defendants rely on the following alleged errors:

1. Failure of the trial court to recognize that the evidence on the question of assumption of risk was undisputed so as to require the entry of a directed verdict in favor of the defendants.

2. That the trial court should have granted a directed verdict in favor of Nicholas Appelhans, father of defendant, on the ground that the family car doctrine was inapplicable and that plaintiff failed to otherwise establish the vicarious responsibility of the father.

3. That the court erred in refusing to allow defend-

ants to use plaintiff's deposition for purposes of impeachment.

4. That the court misinstructed the jury (Instruction No. 11) with respect to the requisites of the family car doctrine.

5. That it was error for the court to refuse to grant defendants' motion for new trial as a result of acts of plaintiff's attorney, consisting of (a) the mention of liability insurance, and (b) in asking whether defendant had ever been arrested in connection with the operation of a motor vehicle.

I. *The first question is whether the undisputed evidence in the case established that there was assumption of risk as a matter of law.*

Defendants' argument is predicated on the proposition that the risks and hazards of the activity which gave rise to plaintiff's injury were fully apparent to her notwithstanding her age. They further argue that she had several opportunities to leave the vehicle and to avoid the very risk which resulted in her injury and that she failed to take advantage of these opportunities. The question which we must determine, therefore, is whether the evidence justified submission of the issue of assumption of risk to the jury. In urging that the undisputed evidence made the question one of law, defendants rely on the decision of this Court in *Haller v. Gross,* 135 Colo. 218, 309 P. (2d) 598. There it appeared that the plaintiff, a 19-year-old, had actually participated in a drinking party with the driver of the vehicle even to the extent that she had offered liquor to the driver while he was engaged in driving the automobile. In holding that the plaintiff was barred in that case, the Court said:

"Plaintiff, while legally a minor, was nineteen years old and possessed of the usual and ordinary faculties of an adult person and it may be assumed that she was fully capable of knowing, or could anticipate, danger that might follow from the operation of the car due to the physical incapacity of the driver, and she made no

effort to avoid the likelihood of the accident and it must be said that she assumed the risk, which bars her recovery. * * * "

The facts in the instant case are, however, quite different from those in the *Haller* case. Here the plaintiff is a 14-year-old girl who had the mentality, according to the testimony of the family doctor, of a 10-year-old. She was shown to have had little, if any, experience or knowledge concerning the operation of an automobile and practically no knowledge concerning the effects of alcohol. Furthermore, she was not shown to have participated in the drinking, and thus it cannot be said that the case is governed by *Haller v. Gross,* supra. In *Wilson v. Hill,* 103 Colo. 409, 86 P. (2d) 1084, the Court in speaking of the duty of a passenger to protect himself from risks apparent to him held that the failure of a passenger to leave the vehicle at the first available opportunity did not in and of itself constitute contributory negligence. The Court said that this issue must be judged in the light of all of the surrounding facts and circumstances and that essentially the matter is one for determination by the jury under proper instructions.

In a later case, *United Brotherhood of Carpenters and Joiners v. Salter,* 114 Colo. 513, 167 P. (2d) 954, the Court distinguished between the case where one enters a vehicle with full knowledge that the driver is under the influence of liquor and one in which the question of the plaintiff's knowledge is open to determination. Speaking through Mr. Justice Stone it was said:

"The effect of intoxicating liquor in depriving a driver of care and caution and inducing physical incapacity in the operation of a car is universally known and tragically illustrated almost daily. Where one becomes a guest and imprudently enters a car with knowledge that the driver is so under the influence of intoxicants as to tend to prevent him from exercising the care and caution which a sober and prudent man would employ in the operation and control of the car, the guest is barred from

recovery by reason of his contributory negligence, and as having assumed the risk involved. Where the evidence of such fact is without conflict, plaintiff is barred from recovery as a matter of law. * * * (Citing authorities.) Where the evidence is sufficient to raise a question as to plaintiff's knowledge and prudence, the determination of that issue must be submitted to the jury or other trier of facts * * * (citing authorities)."

■ From a careful consideration of the *Wilson* and the *United Brotherhood* cases, together with our most recent decision in *Cox v. Johnston,* 139 Colo. 376, 339 P. (2d) 989, we conclude that the issue of the extent of plaintiff's knowledge was properly one for the jury. Plaintiff's age and her mental immaturity were matters to be considered by the jury in measuring the extent of the plaintiff's knowledge of automobiles and alcohol, and were for the jury to weigh and consider in determining whether there was a voluntary assumption of risk with full knowledge of the hazards threatened. In determining the voluntariness of her presence, it was also open to the jury to consider whether the plaintiff's presence was coerced by her fear of the consequences of leaving the car, there being evidence to support such a theory. The jury was fully and correctly instructed concerning the law of contributory *fault* or assumption of risk, and it concluded that the plaintiff was not barred by reason thereof.

■ A corollary question is whether defendants were treated unjustly by removal of the defense of contributory negligence. Undoubtedly the court believed that the defendants' theory of the case was adequately presented by the doctrine of assumption of risk; that the alleged misconduct on the part of the plaintiff was more nearly within the category of assumption of risk than contributory negligence. The relationship of these two defenses is discussed by *Prosser on Torts,* 305, 2d Ed. (1955) as follows:

" * * * In working out the distinction, the courts have arrived at the conclusion that assumption of risk is a matter of knowledge of the danger and intelligent acquiescence in it, while contributory negligence is a matter of some fault or departure from the standard of reasonable conduct, however unwilling or protesting the plaintiff may be. The two may coexist, or either may exist without the other. The difference is frequently one between risks which were in fact known to the plaintiff, or so obvious that he must be taken to have known of them, and risks which he merely might have discovered by the exercise of ordinary care."

In the case at bar, the alleged contributory fault of plaintiff was adequately embraced by the doctrine of voluntary assumption of risk and we perceive no prejudice to defendants resulting from withdrawal from the jury of the question of contributory negligence.

II. *Did the trial court err in suppressing the deposition of the plaintiff and in refusing to admit it in evidence?*

■ Rule 30 (f) of the Colorado Rules of Civil Procedure sets forth the mechanics applicable to certifying and filing depositions. Customarily, after correction of the deposition and after it is signed or following a refusal to sign it, the deposition is delivered to the officer who seals it promptly and files it with the court in which the action is pending. This procedure was not followed in the present case due, at least in part, to the failure of counsel for plaintiff and the failure of the reporter to carry out the requirements of Rule 30 (f). Rule 32 (d) provides that irregularities in the preparation, signing, certifying, sealing, etc., are waived unless a motion to suppress the deposition is made with reasonable promptness after such defect is discovered or with due diligence might have been ascertained. The discussion in 4 *Moore's Fed. Prac.* 2202, Sec. 32.02, 2d Ed. (1950), is to the effect that the rule is intended to render

technical objections unavailable at the trial. The author points out that the objections must be substantial and must affect the value of the deposition as evidence in order to preclude its use at the trial. It seems clear from examination of the rule and Moore's comments that the court was in error when it ordered this deposition suppressed upon the basis of the first appearance of irregularities. Counsel for defendants was merely seeking to establish an impeaching foundation by asking the plaintiff whether she had made particular statements on the occasion of the giving of the deposition. Under no circumstance would a motion to suppress have been proper at this point. The court's subsequent action in suppressing the deposition, despite agreement by counsel for plaintiff that it be admitted for a limited purpose, was palpably erroneous. Defendants were entitled to refer to the deposition or any other document which would serve to bring to the attention of the witness any prior statement which she had made looking to ultimate impeachment. The question of the inadmissibility of the deposition was not a valid issue until such time as the defendants proposed to impeach the witness by introducing the deposition. Until then it was not admissible in evidence. Our practice, unlike that under the Federal rules, does not permit its introduction as an admission. This action of the court being erroneous, the question is whether the error requires reversal. In considering this point, we note the failure of counsel to establish an impeaching foundation. Noteworthy also is the fact that counsel for defendants made no effort to obtain the signing of the deposition at the trial or to subsequently produce the reporter for the purpose of certifying it. He undoubtedly considered the error substantial and reversible and for that reason did not press the point. In view of this, we think it pertinent to inquire whether the deposition had value as a source of impeachment. From a careful study of the entire testimony of the plaintiff

and a comparison of this testimony with the deposition, we are of the opinion that its use would have added little to the proceedings. Plaintiff's testimony at the trial was so highly vague and inconsistent that it added virtually nothing to the plaintiff's case except to show her inability to remember any detail whatsoever or to make any other contribution of a substantial nature. There was a strong similarity between the deposition and the testimony. Both were equally vague and inconsistent. The alleged differences for the most part deal with minor matters such as the number of stops affording opportunities for the plaintiff to escape from the brakeless automobile. It is apparent from the testimony of the plaintiff that there were several such opportunities. It is hard to see how further inconsistencies as to the time or place of these stops could prove beneficial to the defendants' case. These could only tend to establish plaintiff's lack of capacity as a witness, which fact was already established. In view of these considerations, we are constrained to hold that the trial court's error in dealing with this problem is not an error requiring reversal of the judgment.

III. *The question whether the court erred in allowing the family car doctrine to be submitted to the jury.*

█ The vehicle was, according to the testimony, the property of the defendant notwithstanding that it stood in the name of the co-defendant father. The undisputed evidence was that the father did not even drive the vehicle; that the defendant had repaid his father the entire purchase price and that defendant alone drove the car. The facts indicating ownership in the father caused the trial court to rule that the family car doctrine was applicable. Therefore, the question is whether ownership in and of itself is sufficient to justify application of the family car doctrine. The reason for the rule of law is one of policy. It allows negligence to be imputed to the owner of an automobile who permits members of his house-

hold to drive it for their pleasure or convenience. It is said that this renders the driving the "business" of the head of the household-owner and that it is fair and just that he be held responsible under the law. See *Prosser on Torts,* 369, 2d Ed. (1955). Colorado has applied this doctrine in several cases including *Hutchins v. Haffner,* 63 Colo. 365, 167 Pac. 966; *Boyd v. Close,* 82 Colo. 150, 257 Pac. 1079, and *Boltz v. Bonner,* 95 Colo. 350, 35 P. (2d) 1015. Many of these decisions have considered the actual facts and have determined that the driver was in fact furthering the business of the head of the family. A recent decision, that in *Ferguson v. Hurford,* 132 Colo. 507, 290 P. (2d) 299, went further. It held (in an opinion by Mr. Chief Justice Alter) that the mother who was head of the household and who held the title, registration and mortgage papers and who had obtained liability insurance was responsible even though it further appeared that the son had beneficial ownership and was making the payments. In holding the doctrine applicable, it was said:

"Without the necessity of citation of any authorities, these admitted and undisputed facts conclusively establish that defendant was the owner of the automobile involved in the accident, and as such was equally liable with her son, the driver thereof, for any damages resulting to another by reason of his negligence while operating the automobile with her permission. * * * "

The case at bar is within the scope of and is thus governed by the *Ferguson* ruling. The indicia of ownership in the instant case were sufficient to justify the application of the family car doctrine.

IV. *The question whether the defendants were entitled to a mistrial resulting from the attempt to question the father on whether he had taken out liability insurance.*

■ Objection was sustained to the liability insurance question and thereafter the defendants moved for a mis-

trial. *Ferguson v. Hurford* recognizes that this is a pertinent inquiry where the question of ownership and control is present. Here the defendants were seeking to overcome the presumption which arose from the fact that the title was in the father's name. The showing that the father had taken out liability insurance was entirely relevant. That being so, the court's ruling denying the motion for mistrial was not erroneous.

V. *The propriety of the questions propounded to defendant as to his driving record and as to his father's knowledge of his past driving offenses.*

Normally such inquiries would be improper, but one of the claims pleaded sought to impose liability upon the father predicated on his knowledge of the irresponsibility of the defendant as a driver. The inquiries had some relevance; therefore, the mere asking of questions (the objections having been sustained) fail to furnish a ground for reversal.

Being of the opinion that the trial was free of prejudicial error, the judgment is affirmed.

MR. JUSTICE DAY and MR. JUSTICE SUTTON concur.