519 P.2d 1201 (1973)
TRANSAMERICA INSURANCE COMPANY, a California corporation, Plaintiff-Appellee,
v.
The PUEBLO GAS AND FUEL COMPANY, a Colorado corporation, Defendant-Appellant.
No. 72-239.
Colorado Court of Appeals, Div. I.
October 24, 1973.
Rehearing Denied December 4, 1973.
*1202 Walberg & Pryor, Robert W. Carney, Denver, for plaintiff-appellee.
Lee, Bryans, Kelly & Stansfield, Denver, Seavy & Jensen, V. G. Seavy, Pueblo, for defendant-appellant.
Selected for Official Publication.
SMITH, Judge.
Transamerica Insurance Company, assignee of its insured's claim, brought this action against defendant Pueblo Gas and Fuel Company for damages resulting from a fire allegedly caused by defendant's negligence. The case was tried to a jury under the comparative negligence statute, 1971 Perm.Supp., C.R.S.1963, 41-2-14, and a verdict was returned finding defendant 100 per cent negligent and awarding damages to plaintiff. Appealing from a judgment entered in accordance with that verdict, defendant urges that the lower court erred in permitting plaintiff, while establishing a foundation for impeachment, to read from a deposition not meeting the requirement of C.R.C.P. 30(e), and that the jury's verdict was contrary to the law and the evidence. We affirm the judgment entered on the verdict.
On May 31, 1972, Alphonso Martinez vacated his cafe located at 301 and 303 Court Street, Pueblo, Colorado. Prior to that time, Mr. Martinez had called the defendant and requested that the gas service for his cafe be terminated. 301 and 303 Court Street were serviced by two separate gas meters, and there is conflicting evidence whether Mr. Martinez requested that one or both meters be shut off. Thereafter, plaintiff's insureds occupied 301 and 303 Court Street, and began renovations. Insureds also called defendant and requested that gas service for the Martinez cafe be terminated. At that time, insureds did not know that two meters serviced the premises.
Unaware that the pilot light was still on, insureds laid building materials against a heater serviced by the meter serving 303 Court Street. During the evening of July 10, 1972, the temperature dropped, the heater was activated automatically, and a fire started because the heat emanating from the heater could not dissipate. Plaintiff's theory of recovery is that defendant negligently failed to shut off the gas meter servicing 303 Court Street.

I
Defendant first urges that the trial court erred in permitting plaintiff's counsel to read from a deposition which had not been signed in compliance with C.R.C.P. 30(e). Mrs. Even, defendant's employee who received the request for termination of services from Martinez, was called to the stand by plaintiff. She testified that she recalled no conversation as to whether both meters should be shut off. Without objection, plaintiff's counsel sought to impeach his own witness by a prior inconsistent statement elicited from Mrs. Even during the taking of a deposition. Reading from the deposition, plaintiff's counsel asked:
"And at the time of that deposition were you asked the question: `Did you ask him [Mr. Martinez] if he wanted both of them shut off?'"
The witness recognized the question and admitted that she had answered affirmatively. She was then handed the deposition and asked whether her affirmative answer *1203 appearing in the deposition was correct. She stated that her answer in the deposition had been incorrect. Defendant argues that because the deposition was not signed nor corrected by Mrs. Even, as required by C.R.C.P. 30(e), it was error for the trial court to permit the above-described use of the deposition.
Both parties agree that Appelhans v. Kirkwood, 148 Colo. 92, 365 P.2d 233, is controlling. In that case the supreme court stated:
"It seems clear from examination of the rule and Moore's comments that the court was in error when it ordered this deposition suppressed upon the basis of the first appearance of irregularities. Counsel for defendants was merely seeking to establish an impeaching foundation by asking the plaintiff whether she had made particular statements on the occasion of the giving of the deposition. Under no circumstance would a motion to suppress have been proper at this point. . . . Defendants were entitled to refer to the deposition or any other document which would serve to bring to the attention of the witness any prior statement which she had made looking to ultimate impeachment. The question of the admissibility of the deposition was not a valid issue until such time as the defendants proposed to impeach the witness by introducing the deposition."
Defendant reads Appelhans as limiting reference to the deposition to the establishment of a foundation for impeachment. He argues that plaintiff in the present case went beyond foundational questions, and in fact impeached the witness with the deposition.
Although the deposition was not offered into evidence, defendant urges that referring by name and date to the taking of the deposition, reading from it to the witness, showing the exact line of the deposition being referred to, and asking the witness questions about that line has the same effect on the jury as introducing the deposition into evidence. He concludes that plaintiff should not be able to do indirectly that which he is prohibited from doing directly.
Defendant's theory misapprehends the procedure for impeachment by prior inconsistent statement and the purpose of C.R.C.P. 30. First, a proper foundation must be laid for impeachment by prior inconsistent statements by specifically calling attention of the witness to the particular time and occasion when, the place where, and the person to whom he made the statements. Duran v. People, 162 Colo. 419, 427 P.2d 318. Before a party can offer proof that the witness made prior inconsistent statements, the witness must be afforded an opportunity to deny, admit, or explain circumstances under which the purported statement was made. Balltrip v. People, 157 Colo. 108, 401 P.2d 259. As a part of that foundation, the examiner may refer to plaintiff's deposition to bring to the attention of the witness any purported prior inconsistent statement. Appelhans v. Kirkwood, supra. The exact language of the prior statement may be given. See Douthitt v. Hoover, 75 Colo. 511, 226 P. 863. Where the witness denies or does not remember making the prior statement, extrinsic evidence, such as a deposition, proving the utterance of the prior statement is admissible. Douthitt v. Hoover, supra; Jones v. People, 2 Colo. 351. However, if a witness admits making the prior statement, additional extrinsic evidence that the prior statement was made is inadmissible. Duran v. People, supra. In other words, denial or failure to remember the prior statement is a prerequisite for the introduction of extrinsic evidence to prove that the prior inconsistent statement was made. See C. McCormick, Law of Evidence § 37 (1954).
In the present case, plaintiff referred to the taking of the deposition and read the purportedly inconsistent statement to the witness in laying his foundation for *1204 impeachment. The witness admitted having made the statement. By this admission, Mrs. Even impeached herself by providing testimony that she made the prior inconsistent statement. See Zuber v. Northern Pacific Ry. Co., 246 Minn. 157, 74 N.W.2d 641. There was therefore no necessity for the deposition to be admitted in evidence, and its admission would have been improper. Duran v. People, supra.
The purpose of C.R.C.P. 30(e), which rule requires submission of the deposition to the witness for examination, correction, and signature, is to provide verification of the deposition's content in order that the writing may be introduced as evidence of the witness's own words. See J. Wigmore, Evidence § 805 (1970). In the present case, proof of the contradictory statement was elicited from the mouth of the witness, not by introduction of the deposition into evidence. Thus, the safeguards for accuracy of the deposition as evidence, which are embodied in C.R.C.P. 30(e), were inapplicable. The trial court was therefore correct in denying defendant's motion to prohibit plaintiff's use of the deposition.

II
Defendant also asserts that the jury's verdict finding that the defendant was 100 per cent negligent is contrary to the law and the evidence. It is argued that absent the insured's act in laying building materials across the heater, there would have been no fire, and that this act must, as a matter of law, relieve defendant from full liability.
The issue of percentage of negligence is one for the jury, and only in the clearest of cases where the facts are undisputed and reasonable minds can draw but one inference from them should such issues be determined as a matter of law. See Holzem v. Mueller, 54 Wis.2d 388, 195 N.W.2d 635; McQueen v. Robbins, 28 Colo.App. 436, 476 P.2d 57. In the case at bar, there is evidence that plaintiff's insureds requested termination of services and that they saw defendant's serviceman on their premises later the same day. On the basis of these facts, the jury could reasonably conclude that the insureds were not negligent in any way contributing to the occurrence of the fire.
Judgment affirmed.
SILVERSTEIN, C. J., and ENOCH, J., concur.