Oscar **WHITLOCK**, Plaintiff-Appellant and Cross-Appellee,

v.

**UNIVERSITY OF DENVER**, a Colorado corporation, Defendant-Appellee and Cross-Appellant.

No. 83CA0136.

Colorado Court of Appeals, Div. III.

Aug. 8, 1985.

Rehearing Denied Sept. 12, 1985.

Certiorari Granted (University) Jan. 31, 1986.

Gerash & Robinson, P.C., Walter L. Gerash, Scott H. Robinson, Denver, for plaintiff-appellant and cross-appellee.

Hall & Evans, Eugene O. Daniels, James A. Smith, Alan Epstein, Denver, for defendant-appellee and cross-appellant.

Kripke, Epstein & Lawrence, P.C., Scott W. Lawrence, Denver, amicus curiae for Colo. Trial Lawyers Ass'n.

Covington & Burling, Eugene D. Gulland, J. Peter Byrne, Washington, D.C., amicus curiae for American Council on Educ.

TURSI, Judge.

Plaintiff, Oscar Whitlock, appeals an order granting the defendant University of Denver's motion for judgment notwithstanding the verdict and, in the alternative, a remittitur or a new trial. The university cross-appeals that part of the trial court's order which upheld the jury's finding that the university owed a legal duty to the plaintiff. We reverse, and remand for reinstatement of the jury verdict.

On July 19, 1978, at approximately 10:00 p.m., plaintiff, a student at the defendant university, injured his neck on a trampoline while attempting a one and three quarters front flip. The injury rendered plaintiff a quadriplegic. The trampoline was owned by Beta Theta Pi, a recognized fraternity on the university's campus.

Plaintiff brought suit against the university, the fraternity, the trampoline manufacturer and seller, and several named individuals. Settlement was reached with all defendants except the university.

The jury returned a verdict in favor of plaintiff, finding the university to be 72% at fault and plaintiff to be 28% at fault for plaintiff's injuries. The jury determined plaintiff's total damages at $7,300,000 and, in accordance with the university's percentage of fault, judgment was entered against it for $5,256,000.

In granting the university's motion for judgment notwithstanding the verdict, the trial court found that plaintiff had presented sufficient evidence to establish duty and standard of care so that it was for the jury to determine whether that standard was breached. The trial court also found that there was evidence of contributory negligence. The court ruled, however, that the jury was improperly influenced by sympathy for the plaintiff's drastic injuries in assigning plaintiff only 28% of the fault. The court concluded that: "Excluding sympathy ... reasonable men and women hearing the evidence as to the University's negligence and weighing it against the evidence of contributory negligence committed by the plaintiff would have barred his recovery by finding him equally or more negligent than the University." Accordingly, the trial court set aside the jury's assessment of relative fault and entered a finding that the plaintiff's negligence exceeded that of the university.

In addition, the trial court found that the jury's determination of the total damages of $7.3 million was excessive and also was influenced by "sympathy, passion or prejudice." The court ruled that the proper measure of damages reflected by the evidence presented of plaintiff's loss of future earnings and pain and suffering should have been no more than $4 million. As an alternative measure therefore, the trial court entered a remittitur in that amount in the event its ruling on the judgment notwithstanding the verdict motion was overturned on appeal. As a third alternative, the trial court granted the university's motion for new trial.

I

The existence and scope of tort duties are questions of law for the court to determine. *Metropolitan Gas Repair Service, Inc. v. Kulik*, 621 P.2d 313 (Colo. 1981). A legal duty to use reasonable care

arises in response to a foreseeable risk of injury to others. *Palmer v. A.H. Robbins Co.*, 684 P.2d 187 (Colo.1984); *Metropolitan Gas Repair Service, Inc. v. Kulik, supra.* In this negligence by omission case, the factors to be considered in determining whether the law should impose a duty are the risk, foreseeability, and likelihood of injury weighed against the social utility of the actor's conduct, the magnitude of the burden of guarding against the injury, and the consequences of placing that burden on the defendant. *See Iverson v. Solsbery*, 641 P.2d 314 (Colo.App.1982). Here, the record amply supports the trial court's conclusion that the university owed a duty to persons in plaintiff's situation either to remove the trampoline from the fraternity premises or to supervise its use.

■ Evidence adduced at trial revealed the following facts. The Beta Theta Pi fraternity house (Beta house) is located in a central part of the university campus near an open and well traveled courtyard and a general classroom building. The house stood on land leased to the fraternity by the university. A trampoline had been present at various points on the lawn around the Beta house continuously for as long as 10 years prior to plaintiff's accident. There had also been a trampoline in front of a neighboring fraternity house. University personnel were aware of the presence and use of these trampolines.

There was testimony from former students and fraternity members that many students, people from the community, and children jumped on the Beta trampoline frequently, often in the evening. There was evidence that several individuals were injured as a result of jumping on trampolines owned by the Betas and the other fraternity. Some of these injuries were reported to university security and some individuals were treated by the university's student health clinic.

The university's director of athletics and recreation testified regarding the dangers surrounding the unsupervised use of trampolines. He stated that, when he began working at the university, the school owned only one trampoline which, he learned, students often jumped on without supervision. Because he believed that the trampoline was a dangerous piece of equipment, he had the trampoline locked up and issued keys to gymnastic coaches and their assistants. He instituted a policy whereby the trampoline was to be used only under the supervision of a coach.

Other evidence revealed that the university exercised a degree of control over certain activities of students in campus fraternities. A safety council created by the chancellor of the university sought to curb skateboarding on campus because of numerous injuries reported to the council by the campus security officers. The council required participants in fraternity boxing to have medical check-ups. The university also regulated fraternity greased pole climbing contests.

The assistant dean of student life visited fraternities once a week or so and discussed various issues including safety and violations of university policies. The dean and the safety council required that a grid be placed on a fraternity house window after a student had been injured falling out of it.

The lease between the Beta fraternity and the university was placed in evidence and revealed that the university was responsible for maintaining the fraternity building and its surroundings in "as good order and condition as other portions of the campus." The lease reserved in the university the right to terminate the lease for a violation of "the reasonable rules of conduct ... imposed from time to time on students ... by the [university]."

Plaintiff also entered into evidence, over the objection of the university, several documents and articles from publications dating from before plaintiff's accident showing increased concern among educators and sport professionals about the use of trampolines in schools and sports. These articles reported that spinal injuries and paralysis were common injuries resulting from improperly executed tumbling maneuvers on trampolines. Some members of the uni-

versity's staff were familiar with these articles or with other information of this nature.

Defendant argues that our holding in *Burchinal v. Gregory*, 41 Colo.App. 490, 586 P.2d 1012 (1978), is controlling in this instance. We disagree.

In *Burchinal* we held that the mere ownership of a trampoline raised no duty to warn a 15-year-old user of the dangers of trampoline jumping which the user already understood and appreciated. The trial court in Burchinal granted defendants' motion for summary judgment when plaintiffs failed to introduce any evidence upon which to ground a duty upon defendants. There, plaintiffs seem to have relied solely upon the allegations in their complaint. Here, the plaintiff introduced abundant and sufficient evidence upon which a duty could be based and upon which a jury could compare the negligence of the parties and find the defendant's negligence to be greater than that of the plaintiff. Thus, under the facts of this case, *Burchinal* is inapposite.

## II

The trial court granted the university's motion for judgment notwithstanding the verdict based upon its conclusion that "the strong effect of sympathy on the jury overrode the abundant and convincing evidence as to contributory negligence on behalf of the plaintiff." After reviewing the record, we are convinced that the trial court erred because there was no showing that passion or prejudice affected the jury's assessment of degree of fault.

■ The issue of percentage of negligence is one for the jury. Section 13–21–111(4), C.R.S. (1984 Cum.Supp.); *Holmes v. Gamble*, 655 P.2d 405 (Colo.1982). Only in the clearest of cases where the facts are undisputed and reasonable minds can draw only one inference from them should relative fault be determined as a matter of law. *Transamerica Insurance Co. v. Pueblo Gas & Fuel Co.*, 33 Colo.App. 92, 519 P.2d 1201 (1973). A jury's determination of relative fault cannot be disturbed in the absence of a clear showing of passion or prejudice. *Dunham v. Kampman*, 37 Colo.App. 233, 547 P.2d 263 (1976), *affirmed*, 192 Colo. 448, 560 P.2d 91 (1977).

■ No such showing was made in this case. The evidence submitted to the jury was conflicting as to the degree either party contributed to plaintiff's injury. Reasonable minds therefore could certainly draw different conclusions regarding the respective proportions of fault. *See Maloney v. Jussel*, 125 Colo. 125, 241 P.2d 862 (1952). Whether sympathy or passion improperly caused the jury to vote in favor of plaintiff is not evident from the record. The trial court's only finding concerning such prejudice noted:

> "The jury saw the plaintiff throughout the trial in a wheelchair and heard and saw evidence about the complications he suffers because of this injury. They surely realized that his life was drastically altered by this accident and felt sympathy for him, as we all did."

There is nothing improper about allowing a quadriplegic plaintiff to be present during his trial. *See Rausch v. Cozian*, 86 Colo. 389, 282 P. 251 (1929); *Denver, Texas, & Fort Worth R.R. v. Smock*, 23 Colo. 456, 48 P. 681 (1897). Nor is it improper to present evidence regarding the drastic nature of a plaintiff's injuries. *Duffy v. Gross*, 121 Colo. 198, 214 P.2d 498 (1950). Indeed, such evidence is necessary for the jury properly to calculate the damages. *See Bruckman v. Pena*, 29 Colo.App. 357, 487 P.2d 566 (1971). Sympathy for a plaintiff's injured condition is not tantamount to the passion or prejudice necessary to overturn a jury verdict. Accordingly, there is no legal basis for the trial court's order entering judgment for the university.

## III

■ The trial court granted the university's motion for new trial "for the [same] reasons" that it granted the judgment notwithstanding the verdict. The standards for directing a verdict and setting one aside for new trial are widely different and should not be controlled by the same condi-

tions and circumstances. *Burenheide v. Wall*, 131 Colo. 371, 281 P.2d 1000 (1955); *Gossard v. Watson*, 122 Colo. 271, 221 P.2d 353 (1950). The entry of a judgment notwithstanding a verdict involves a legal standard, while the authority to grant a new trial rests in the discretion of the trial court. *Singer v. Chitwood*, 126 Colo. 173, 247 P.2d 905 (1952); *Gossard v. Watson, supra.* Accordingly, we must review whether the trial court abused its discretion in granting a new trial. C.R.C.P. 59(a), *First National Bank v. Campbell*, 198 Colo. 344, 599 P.2d 915 (1979).

A trial court is required to grant a new trial if the verdict is the product of bias, prejudice, or passion. *Burns v. McGraw-Hill Broadcasting Co.*, 659 P.2d 1351 (Colo.1983). But, as noted above, in concluding that passion or prejudice had effected the verdict, the trial court referred only to the presence of the plaintiff in the courtroom and evidence regarding complications of his injuries. Since it was proper for the jury to consider these matters, it was error for the trial court to conclude that the verdict was improperly influenced thereby.

## IV

Additionally, it was improper for the trial court to order a remittitur of the total damages from $7.3 million to $4 million. If the trial court makes a finding that an excessive jury verdict resulted from bias, prejudice, or passion, as it did here, a remittitur of the verdict cannot be granted, but rather a new trial on all the issues must be ordered. *Marks v. District Court*, 643 P.2d 741 (Colo.1982). And, since we have already determined that the trial court erred in finding that the jury verdict was improperly influenced, there is no ground for new trial in this case.

Furthermore, the assessment of damages is the exclusive province of the jury, and it is only in the clearest of cases that its award will be overturned on review. *Martin v. Bralliar*, 36 Colo.App. 254, 540 P.2d 1118 (1975). It is undisputed that the jury was properly instructed on the measure of damages. Here, the record is replete with evidence of damages incident to an injury resulting in quadriplegia which would justify an award of this magnitude. We note that there was testimony that plaintiff's economic loss alone would equal $4 million. Thus, it appears that the trial court's remittal would arbitrarily deny plaintiff the jury's award for pain and suffering, permanent disability, loss of time, and enjoyment of life or other noneconomic loss. This it is not privileged to do.

## V

The university objected to testimony regarding the banning and limitations of trampoline use in local public grade schools and high schools. The university argued that the legal duty of a university to its students is not similar to that of public schools and therefore the testimony was irrelevant and misleading. The evidence, however, was relevant to show the inherent dangerousness of a trampoline in a school setting. *See King Soopers, Inc. v. Mitchell*, 140 Colo. 119, 342 P.2d 1006 (1959).

The university also objected to the introduction of the articles from publications concerning the growing awareness of educators of the dangers of unsupervised trampoline activity. The university argues that these documents are hearsay and inadmissible under the learned treatise exception of CRE 803(18). These articles need not be admissible solely as proof that trampolines were dangerous. *See Spencer v. People*, 163 Colo. 182, 429 P.2d 266 (1967). They are also admissible to show that literature was available to put the university on notice of the national trend toward banning or restricting unsupervised trampoline use. There was evidence in the record that at least two university officials were familiar with literature of this type. Accordingly, the articles were admissible on the issue of the university's knowledge of the risk involved in trampoline jumping.

## VI

The university also contends that there is no *in loco parentis* relationship between a

university and its students, and thus, it owed plaintiff no duty to protect him from the open and obvious dangers of the trampoline. However, as tried, *in loco parentis* was not an issue in this case.

## VII

None of the university's other alleged evidentiary errors rises to the level of reversible error. CRE 103.

Accordingly, the order of the trial court granting the university's motion for judgment notwithstanding the verdict or, in the alternative, a new trial or remittitur, is reversed. The cause is remanded to the trial court with orders to reinstate the verdict and damages as determined by the jury.

METZGER, J., concurs.

STERNBERG, J., dissents.

STERNBERG, Judge, dissenting.

The plaintiff, twenty-years-old at the time of this accident, was serving as acting manager of the Beta house, in front of which the trampoline in question was located. He had been using trampolines since his junior year in high school, and continued to do so while he was enrolled at West Point. There he used the trampoline about every other day over a two month period and learned to execute the 1¾ front flip maneuver which led to his injuries.

The plaintiff started using the Beta trampoline in September 1977, and continued to use it throughout the fall, winter, and spring prior to June 19, 1978, the date of the accident. He testified that he jumped on the trampoline almost daily, that he used it more than anyone else at the fraternity house and that he had successfully executed the 1¾ front flip on 75 to 100 prior occasions.

Commencing in the evening before the accident and continuing until 2:00 a.m., the day of the accident, the plaintiff had been drinking beer, vodka, and scotch. He then slept until 2:00 p.m. that afternoon, jumped on the trampoline between 2:00 and 4:00 p.m., and again at 7:00 p.m. A party was in progress at the Beta house that evening. The plaintiff testified that he resumed jumping on the trampoline at 10:00 p.m. in the dark, and was injured when he failed properly to execute the 1¾ front flip. There is no indication that any defect in the trampoline itself caused the injury.

In *Burchinal v. Gregory*, 41 Colo. 490, 586 P.2d 1012 (1978), this court affirmed the entry of a summary judgment in favor of the owners of a trampoline in a suit brought on behalf of a fifteen-year-old boy who was jumping on the trampoline in the company of the defendants' son. There we held that there was no duty to warn the plaintiff of dangers he already understood and appreciated. Citing *Bookout v. Victor Comptometer Corp.*, 40 Colo.App. 417, 576 P.2d 197 (1978), we stated that: "[W]here the potential for danger is readily apparent, a warning of the obvious is not necessary." Even more than in *Burchinal,* the plaintiff here was experienced in the use of trampolines. Consistent with *Burchinal,* it should be held as a matter of law that the university could not be liable for failure to warn of the obvious.

Nor should the university be charged with regulating or prohibiting every dangerous activity occurring on its campus. The result reached by the majority is to make the university an insurer against every accident involving the trampoline that might occur. *See Hennesy v. Tina Marie Homes, Inc.,* 153 Colo. 572, 388 P.2d 758 (1963); *Burchinal v. Gregory, supra.*

Moreover, even if the university owed a duty to the plaintiff, I would hold that on these facts, no reasonable jury could conclude that the plaintiff was not at least as negligent as the defendant. Thus, the verdict should not stand. *See Britton v. Hoyt,* 63 Wisc.2d 688, 218 N.W.2d 274 (1974); *Robertson v. Johnson,* 291 Minn. 154, 190 N.W.2d 486 (1971).

For these reasons I respectfully dissent from the majority opinion. I would hold that the trial court erred in not entering a judgment notwithstanding the verdict in favor of the university.