492 P.2d 862 (1971)
Patricia R. STAUFFER, Plaintiff-Appellant,
v.
John E. KARABIN, Defendant-Appellee.
No. 70-561.
Colorado Court of Appeals, Div. I.
December 28, 1971.
*863 Friedman, Bader & Moore, Charles A. Friedman, Denver, Walton, Tammen & Hudson, Norman E. Walton, Colorado Springs, for plaintiff-appellant.
Rector, Kane, Donley & Wills, Lee Wills, Colorado Springs, for defendant-appellee.
Selected for Official Publication.
PIERCE, Judge.
Plaintiff, in her complaint for damages, charged defendant, a physician, with malpractice as a result of his alleged negligent diagnosis and surgery, and she further alleged that he failed to obtain her informed consent to the treatment he administered to correct her physical difficulties. She now appeals from a judgment in favor of defendant, following a jury verdict.
In May 1968, plaintiff sought the professional services of defendant to correct difficulty she was having with cramps and increased menstrual periods. Shortly thereafter, defendant performed a dilatation and curetage (commonly known as a D and C) surgical procedure on her.
Plaintiff's symptoms failed to subside and, in June 1968, defendant advised plaintiff that she should undergo a hysterectomy operation. At that time, plaintiff signed a consent form stating that she had been fully advised of the advantages of a hysterectomy, the possible complications of the operation, and alternative modes of treatment.
After the hysterectomy was performed, plaintiff developed a complication known as a ureterovaginal fistula, accompanied by several other complications requiring additional treatment, further surgery, and the eventual loss of a kidney.
The evidence indicates that there were alternative methods of treatment available for plaintiff's condition. Plaintiff maintains she would have elected to undergo one of these other treatments had she known of them. There was further testimony that defendant did not warn plaintiff of the fistula complication, which is not uncommon, or of the other resultant difficulties, all of which were within the realm of possibility.
Defendant offered evidence indicating that his diagnosis and all his surgical procedures were proper and performed with the skill required by medical standards in the community. As to the claim of uninformed consent, he defended on the ground that it was not the standard in the community to inform patients of the possible complications following surgery.
A number of complicated issues arose during this trial and we will discuss two issues which are dispositive of this appeal and two others which might cause difficulty upon retrial if not dealt with at this time.

PHYSICIAN-PATIENT PRIVILEGE
During the cross-examination of plaintiff, she stated that prior to her operation she did not know what a fistula was and had never heard of the complication. Further questioning revealed that she had lived in Colorado Springs for about 15 years and during that period she had been in close contact with her parents who also reside there. Defense then called a Dr. Beadles, a physician who had also treated plaintiff. He testified that, some 13 years *864 prior to the trial of this lawsuit, he had operated on plaintiff's mother for a fistula resulting from surgery similar to that performed on plaintiff. He also testified that the symptoms suffered by the mother were similar to those experienced by plaintiff prior to the final corrective surgery. Plaintiff objected to this testimony on the ground that it was irrelevant and that it violated the physician-patient privilege.
Plaintiff's mother was not a party to the lawsuit. The record does not indicate that she was present in the courtroom or represented by counsel; neither does it indicate that she was informed prior to the taking of this testimony that her doctor would be revealing the details of her condition and treatment.
Defendant maintains that this testimony was proper and relevant to impeach the testimony of plaintiff and to establish that the consent of plaintiff was, in fact, informed consent (Shetter v. Rochelle, 2 Ariz.App. 358, 409 P.2d 74, modified as to another issue, 2 Ariz.App. 607, 411 P.2d 45), although the source of her knowledge was other than statements of defendant. See Natanson v. Kline, 186 Kan. 393, 350 P.2d 1093, modified as to another issue, 187 Kan. 186, 354 P.2d 670. These arguments would be valid were we not also dealing with the physician-patient privilege.
The statute governing the physician-patient privilege in Colorado, C.R.S.1963, 154-1-7, states, in part, as follows:
"(1) There are particular relations in which it is the policy of the law to encourage confidence and to preserve it inviolate; therefore, a person shall not be examined as a witness in the following cases:
. . . . . .
"(5) A physician or surgeon duly authorized to practice his profession under the laws of this state, or any other state, shall not be examined without the consent of his patient, as to any information acquired in attending the patient, which was necessary to enable him to prescribe or act for the patient; provided this section shall not apply to a physician or surgeon who is sued by or on behalf of a patient or by or on behalf of the heirs, executors or administrators of a patient on any cause of action arising out of or connected with the physician's care or treatment of such patient, or to physicians or surgeons who were in consultation with the physician or surgeon so sued on the case out of which said suit arises." (Emphasis supplied)
While the rule set forth in the statute is not absolute in all cases since the privilege may be expressly or impliedly waived (Kelly v. Holmes, 28 Colo.App. 79, 470 P. 2d 590), or nullified by statute (e.g., C.R. S.1963, 22-13-3; see J. Quinn, The Physician-Patient Privilege in Colorado, 37 Colo. L.Rev. 349), no waiver or statutory exception is present here. This is clearly a case where information, normally privileged, was allowed into evidence without waiver or statutory authority.
Defendant argues that there could be no error in this instance, as the privilege is personal to the patient (Wolf v. People, 117 Colo. 279, 187 P.2d 926), or to his estate (In re Shapter's Estate, 35 Colo. 578, 85 P. 688; Quinn, supra), and that the statute is, in effect, inoperative unless invoked by the patient, his counsel, or personal representative. We do not agree.
It is implicit in the wording of the statute that the relationship between a physician and his patient and any information acquired from that relationship are extremely private matters warranting a high degree of protection; that their disclosure by a physician should be prevented unless waived; and that the law will provide that protection at the time the disclosure is attempted, rather than merely providing a remedy after violation.
Where the patient is not a party to the action and is not present or represented by counsel in the courtroom, the mandate of the statute directs the court to enforce the privilege unless a proper waiver is obtained, or a party to the proceedings protects the privilege, as in the *865 case before us. O'Brien v. New England Mutual Life Insurance Co., 109 Kan. 138, 197 P. 1100; C. McCormick Law of Evidence § 96 (1954); 8 J. Wigmore, Evidence § 2386 (McNaughton rev. ed.).
Our review of the record indicates that this improper testimony could have influenced the verdict in this action, and we therefore rule that the admission of this evidence is reversible error.

DIRECTED VERDICT ON FAILURE TO INFORM
One of plaintiff's principal contentions is that she was entitled to a directed verdict because defendant admittedly did not inform her of the danger of the development of a fistula or a kidney loss, and did not inform her of alternative methods of treatment by which the hysterectomy operation could have been avoided. In Mallett v. Pirkey, 171 Colo. 271, 466 P.2d 466, the Supreme Court ruled that a physician
"... had the affirmative duty to inform a patient about to undergo surgery in a general way as to the procedures he will follow and the risks involved in those procedures; he also has a duty to inform a patient of any substantial risk of a procedure which he is to perform and of specific risks, if such risks are known or ought to be known by him."
Plaintiff contends that if her consent was obtained without her being informed of the risks inherent in the operation, the doctor is liable for the unfortunate result even if the manner in which he performed the hysterectomy operation was not negligent (Gray v. Grunnagle, 423 Pa. 144, 223 A.2d 663; Colorado Jury Instructions 15:9, 15:10), and in light of defendant's admitted failure to inform her, she was entitled to a directed verdict. While these abstract principles of law are correct, we do not agree that, under the facts before us, liability is established as a matter of law.
Although, in this complaint, the claim for relief on the theory of lack of informed consent is couched in the language of battery, Colorado has elected to follow the more generally accepted theory set forth in Natanson v. Kline, supra, which applies negligence principles to the informed consent aspect of actions of this nature. Mallett v. Pirkey, supra; Colorado Jury Instructions 15:11, supra; see Fraser and Chadsey, Informed Consent in Malpractice Cases; 6 Willamette Law Journal 183. Under this theory, it is not mandatory for a physician to make full and complete disclosure in all cases and under all circumstances, as disclosure of all risks has been found to be impracticable. Scott v. Wilson, 396 S.W.2d 532, aff'd, 412 S.W.2d 299 (Tex.); Natanson v. Kline, supra. Once proof has been presented indicating that she was uninformed when she gave her consent due to a failure of disclosure, the physician must go forward with evidence establishing that his failure to disclose conformed with community medical standards of care or national standards if, as in the case before us, the national standard is shown to coincide with the community standard, as established by expert testimony. Mallett v. Pirkey, supra; Foose v. Haymond, 135 Colo. 275, 310 P.2d 722; Colorado Jury Instructions 15:1, 15:11, supra; Comment, Informed Consent in Medical Malpractice, 55 Cal.L.Rev. 1396; Collins v. Meeker, 198 Kan. 390, 424 P.2d 488. Since the extent of disclosure is a medical judgment, a showing that nondisclosure of certain facts complies with the community standard is a valid defense. Di Filippo v. Preston, 53 Del. 539, 173 A. 2d 333; Natanson v. Kline, supra. Where, as here, defendant presented evidence that his failure to inform was consistent with community standards, the determination then becomes one for the jury and a directed verdict in favor of plaintiff would not be warranted.

GENERAL REPUTATION OF PHYSICIAN
Plaintiff further objects that defendant was allowed to offer into evidence defendant's general reputation in the medical *866 community. This was error. The only allegations or proof presented against defendant alluded solely to his negligence in this matter. Neither his competency nor his general reputation within the medical community was ever placed in issue. The general rule prohibiting such testimony on the grounds that it is hearsay is, therefore, applicable and evidence of this nature should be avoided on retrial. Green v. Shaw, 136 S.C. 56, 134 S.E. 226; 2 B. Jones on Evidence § 148, 163(a) (5th ed. was present in the courtroom at the time 1958).

USE OF DEPOSITION OF A PARTY PRESENT IN COURTROOM
Plaintiff attempted to introduce into evidence a portion of defendant's deposition rather than calling him to the stand as her witness, adverse or otherwise. Defendant and no reason was offered as a justification for the use of the deposition. The introduction of the portion of the deposition was refused by the trial court.
Plaintiff maintained a right to have the deposition entered into evidence on the basis of a recent amendment to C.R.C.P. 32 (a) (2) (prior to April 1, 1970, R.C.P.Colo. 26(d) (2)), which now states, in part:
"(a) Use of Depositions. At the trial or upon the hearing of a motion or an interlocutory proceeding, any part or all of the deposition, so far as admissible under the rules of evidence, may be used against any party who was present or represented at the taking of the deposition or who had reasonable notice thereof, in accordance with any of the following provisions:
. . . . . .
"(2) The deposition of a party ... may be used by an adverse party for any purpose." (Emphasis supplied)
It is plaintiff's position that the court should have admitted the deposition at the time and in the manner it was offered upon the bare wording of the amended rule and strongly established authority on the subject. Pursche v. Atlas Scrapper and Engineering Company, 9 Cir., 300 F.2d 467, cert. denied, 371 U.S. 911, 83 S.Ct. 251, 9 L.Ed.2d 170; Cleary v. Indiana Beach, Inc., 7 Cir., 275 F.2d 543, cert. denied, 364 U.S. 825, 81 S.Ct. 62, 5 L.Ed.2d 53; Merchants Motor Freight, Inc. v. Downing, 227 F.2d 247.
Defendant, on the other hand, relies on Naumburg v. Wagner, 81 N.M. 242, 465 P.2d 521, in which a party attempted to introduce portions of a cumulative and immaterial deposition. There the court said:
"... blind reliance on that portion of the rule does not establish error when the court refused to admit portions of a deposition. That permissive rule does not override the other rules of evidence and the discretion of the trial court. [citations]
"When the trial court asked defendant for what purpose she might want to read portions of plaintiff's deposition to the jury, the answer given was: `Under the rules.' The court could hardly determine admissibility or relevancy if not given specific purpose or purposes when faced with an objection from the opposing party."
In the record now before us there is no showing of the relevance, materiality, or purpose for which this portion of the deposition was introduced.
We find the applicable law to be an amalgamation of the respective views of the parties to this action. Upon retrial, should plaintiff attempt to offer this portion of the deposition into evidence rather than call defendant as her witness, she may do so, provided no other rules of evidence are violated and provided, prior to its admission, some showing of a legitimate purpose is made. Pursche v. Atlas Scrapper and Engineering Company, supra; Naumburg v. Wagner, supra; Merchants Motor Freight, Inc. v. Downing, supra.
We do not share defendant's alarm that the entry of this deposition into evidence would deny him the full benefit of having his credibility judged by the jury, or that his right of rehabilitation would be impaired. Upon presentation of his defense, *867 defendant may protect both these rights by taking the stand in his own behalf.
The other errors alleged by plaintiff have been considered and are found to be without merit.
Judgment reversed and remanded for retrial on all issues.
SILVERSTEIN, C.J., and COYTE, J., concur.