540 P.2d 1118 (1975)
Richard W. MARTIN, Plaintiff-Appellee,
v.
Floyd BRALLIAR, Defendant-Appellant.
No. 74-288.
Colorado Court of Appeals, Div. II.
July 8, 1975.
Rehearing Denied August 6, 1975.
Certiorari Denied October 6, 1975.
*1119 Friedman, Bader & Dufty, Charles A. Friedman, Denver, for plaintiff-appellee.
Robert W. Hansen, Denver, for defendant-appellant.
Selected for Official Publication.
KELLY, Judge.
Richard Martin sued Dr. Floyd Bralliar for medical malpractice, and Bralliar appeals from the judgment entered on the jury's award of $60,000 damages. Bralliar asserts as grounds for reversal: (1) That the issue of informed consent was improperly submitted to the jury because Martin did not show that, by the medical standards of the community, there were any substantial or specific risks which Bralliar was required to divulge; (2) that Dr. Betson, one of Martin's medical witnesses, was not competent to testify, since he was not practicing in the community at the time the surgery was performed; (3) that the trial court erred in failing to instruct the jury that a portion of the damage claim had been withdrawn by Martin; and (4) that the damages are excessive. We affirm.
This dispute arose out of the following facts. In August 1968, Martin, while attempting to cut a piece of cardboard with a butcher knife, severed the right flexor profundus and sublimis tendons, and the digital nerve, of the fifth finger of his right hand, and also inflicted a cut on the ring finger. He received emergency treatment at Lutheran Hospital, and subsequently consulted Bralliar, a specialist in hand surgery.
After a period of treatment, Martin had full mobility of his ring finger, but his fifth finger remained as it had been since the accident. Martin could move it at the joint with the hand, but could not flex the finger. Bralliar recommended surgery to repair the tendons in the fifth finger and *1120 to put the finger in a functional position. Surgery was scheduled for October, and at Martin's pre-operative appointment with Bralliar, Martin, who was then the manager of a data processing computer room, took the occasion to bring a tray of IBM cards to Bralliar to show him the manual dexterity required in his work. He also informed Bralliar that he was experiencing a clicking sound in his ring fingera condition known commonly as "trigger finger."
Bralliar told Martin he would repair the "trigger finger" in the course of the surgery on the tendons in the fifth finger. When Martin expressed concern about endangering the function of the ring finger, Bralliar assured him that, though the function of the fifth finger would be no worse after surgery than it was before, there should be no problem with the ring finger.
After the surgery, Martin was surprised to find his arm and hand encased in a splint which appeared to be made of plaster of Paris. Three weeks later, when this device was removed, Martin's two fingers were in a "curled," or flexed, position, and he discovered that he could not move them. Bralliar told him to soak the hand and return in a week.
The fingers did not improve, however, and in March 1969, Bralliar performed a second operation on Martin's hand. Before this surgery was performed, Bralliar told Martin that scar tissue was responsible for the condition of the fifth finger, and that, although he did not know what went wrong with the repair to the ring finger, he would examine it during the second operation.
The March operation produced no change. Martin's two fingers remained flexed, and post-operative treatment did not relieve this condition. At the end of April, Bralliar suggested amputation of the fifth finger. Martin declined, and subsequently commenced this action. His expert witnesses testified that the stationary condition of his ring finger in a flexed position resulted from the October surgery performed simultaneously on both fingers and the subsequent immobilization of the two fingers for several weeks following the operation.

Informed Consent
Bralliar contends that the issue of informed consent should not have been submitted to the jury. He argues that Martin had the initial burden of proving that Bralliar was required by the medical standards of the community to inform him of substantial risks to be anticipated from the ring finger surgery, and that Martin failed to meet this burden. We disagree.
A surgeon is required to obtain the consent of a patient about to undergo surgery, and this consent must be an informed consent. See Mallett v. Pirkey, 171 Colo. 271, 466 P.2d 466. Therefore, a physician has a duty not only to advise a patient, in a general way, of the surgical procedures to be employed, and the risks involved therein, but also to inform a patient of any substantial risk, and of specific risks, if they are known or ought to be known by him. See Mallett v. Pirkey, supra; Colorado Jury Instructions 15:11. However, once there is evidence that a patient was uninformed because of nondisclosure at the time consent was given, the burden is on the physician to go forward with evidence showing that the nondisclosure conformed with community or, if applicable, national medical standards of care. See Stauffer v. Karabin, 30 Colo. App. 357, 492 P.2d 862.
Here, the evidence was uncontroverted that Martin was not informed of any risks to be expected from the ring finger surgery. Even Bralliar testified that he had told Martin "there should be no problem."
Martin's medical experts testified that a finger should not be immobilized for longer than a week after surgery of this kind. It was clearly their opinion that the risk of permanent finger contraction, as a result of prolonged immobilization, is both a known and a substantial risk. Bralliar, on the other hand, acknowledged this risk, *1121 but testified that he did not consider it substantial. There being evidence of the substantiality of the risk and uncontroverted evidence of its nondisclosure, it was Bralliar's burden to go forward with evidence of the medical standards which would relieve him of the duty to disclose. See Stauffer v. Karabin, supra. No such evidence was offered by Bralliar.
Bralliar also argues that, because he advised Martin of the nature of his injury and the general nature of the surgery, there was partial disclosure, and that, only in cases of complete nondisclosure, is a plaintiff excused from establishing the community or national medical standards requiring disclosure. We do not agree. Mallett v. Pirkey, supra, plainly sets forth the duty of a physician to reveal not only the generalities of the procedures to be employed and attendant risks, but also substantial and specific risks which are known or which ought to be known by him. Disclosure of general risks does not discharge the duty to disclose substantial or specific risks.

Competence of the Expert Witness
Bralliar contends that Dr. Betson, one of Martin's expert witnesses, was not competent to testify to the standards of care in the community because he was not in practice in the same locality as Bralliar at the time this surgery was performed. This argument assumes that the standard of care to be applied in this case was confined to the Denver metropolitan area. The testimony does not support this assumption.
Every medical witness who testified in this case said that the procedures for treatment of a "trigger finger" were the same throughout the United States and had not changed appreciably for a period of many years. Even Bralliar conceded that "the procedures are pretty standard." It was uncontroverted that national standards of care were applicable to the facts of this case. See Murphy v. Dyer, 409 F.2d 747, 37 A.L.R.3d 414 (10th Cir.).
Voir dire examination of Betson revealed that he graduated from the University of Colorado medical school in 1962 and was admitted to practice in this state in 1963. His subsequent medical training evidenced both his knowledge in the field of hand surgery and his comprehension of the standards of care applicable in Denver and throughout the United States in 1968, when Martin's surgery was performed in Denver.
It is within the discretion of the trial court to determine the competence of an expert witness to testify. See Starkey v. Bryan, 166 Colo. 43, 441 P.2d 314; Oglesby v. Conger, 31 Colo.App. 504, 507 P.2d 883. There is no abuse of discretion when, as here, the evidence shows that the proposed witness is familiar with the standard of care in the same or similar communities at the time in question. See Riley v. Layton, 329 F.2d 53 (10th Cir.).

Failure to Instruct
Bralliar argues that the trial court erred in failing to instruct the jury that Martin had withdrawn his claim for damages for injury to the fifth finger at the close of the evidence. Bralliar tendered such an instruction, and he asserts that its refusal must have misled the jury because of the voluminous testimony about the injuries to and the surgery upon both the fourth and the fifth fingers.
Had the jury ever been informed that Martin, in his complaint, claimed damages from Bralliar for both his injured fingers, this argument for reversal might be more persuasive. However, the jury never knew of this claim in the complaint, and a reading of the transcript makes it difficult to understand how the jury could have been misled into believing Martin was making such a claim.
In its first instruction to the jury, the trial court clearly limited Martin's claim to Bralliar's alleged negligence in treatment of the "trigger finger" condition of the ring finger and to his alleged failure *1122 to inform Martin of risks and complications and alternative methods of treatment prior to surgery. Nor is there anything in the additional instructions by which the jury could have been misled into believing that it was considering anything other than damages to the ring finger. Instructions to the jury are to be read and considered together in determining whether it has been adequately and correctly advised of the law. See Montgomery Ward & Co. v. Kerns, 172 Colo. 59, 470 P.2d 34.
Martin's own testimony was that he could not use his fifth finger at any time after the accident, and it was uncontroverted that Bralliar told him that the function of this finger would not be improved by the surgery. Under these circumstances, no useful purpose could have been served by advising the jury that Martin had withdrawn a claim it did not know he had made. There being no evidence here from which the jury could have concluded that Martin was entitled to damages for his fifth finger, the trial court properly refused to instruct the jury that this portion of his claim for damages had been withdrawn.

Excessive Damages
Bralliar's claim that the damages awarded by the jury were excessive is without merit. The assessment of damages is the exclusive province of the jury, and it is only in the clearest case that its award will be overturned on review. Under the facts of this case, we cannot say that the wide discretion with which the jury is clothed in fixing damages has been exceeded. See Bohlender v. Oster, 165 Colo. 164, 439 P.2d 999; Davis v. Fortino & Jackson Chevrolet Co., 32 Colo.App. 222, 510 P.2d 1376.
Martin underwent two surgical procedures for the repair of his right hand. He is a right-handed man employed in the field of data processing where manual dexterity is an important faculty. He testified that he was hampered in the most ordinary of daily activities. He had difficulty shaving; he had trouble getting his hand in and out of his trousers' pocket; he could not grip a hammer or an axe; and he could no longer bowl or play golf.
Absent additional surgical procedures, possibly as many as four, the condition of Martin's fingers is permanent. Further operations could cost as much as $4000, with no guarantee of success. These facts justify the jury's award of $60,000.
Judgment affirmed.
ENOCH and SMITH, JJ., concur.