William H. BLOSKAS and Floriene V. Bloskas, Plaintiffs-Appellants,

v.

Douglas H. MURRAY, M. D., Defendant-Appellee.

No. 78-1093.

Colorado Court of Appeals, Div. II.

July 17, 1980.

Rehearing Denied Aug. 21, 1980.

Certiorari Granted Oct. 27, 1980.

Williams, Trine & Greenstein, P. C., William A. Trine, Boulder, for plaintiffs–appellants.

Johnson & Mahoney, P. C., Roger F. Johnson, Denver, for defendant–appellee.

PIERCE, Judge.

Plaintiffs appeal a judgment entered on a jury verdict for defendant in an action based on negligent failure to secure a fully informed consent prior to surgery, and on negligent misrepresentation. We affirm.

In March 1973, plaintiff William Bloskas suffered a fracture and dislocation of his right ankle. After the ankle healed, arthritis developed in the joint, causing pain, stiffness and swelling. The doctor who had been treating William suggested an ankle fusion to eliminate the pain; however William wanted to consult with another physician before agreeing to the surgery.

William consulted with defendant in March 1974. At that time defendant agreed that an ankle fusion might be necessary, but first suggested the removal of a screw which had been placed in the ankle when the original injury had been treated. The removal of the screw relieved the pain temporarily, but in September 1974, William returned to defendant once again suffering severe pain.

During the September meeting the parties discussed the possibility of an ankle fusion, and William remarked that he hoped that if he went ahead with the irreversible ankle fusion, an artificial ankle would not become available shortly thereafter. It is undisputed that defendant then stated that an artificial ankle had become available, although there was conflicting evidence as to whether defendant said that he had previously performed a total ankle replacement or whether he said such an operation had been performed by one of his associates.

William agreed to undergo a total ankle replacement and the operation was accomplished; however, the ankle subsequently became infected and the artificial parts had to be removed. The infection in the ankle could not be eliminated, and, in July 1976, after four unsuccessful attempts at ankle fusion, William's right leg was amputated between the ankle and the knee.

Plaintiffs brought a medical malpractice action against defendant claiming that defendant negligently failed to inform of the substantial and specific risks associated with a total ankle replacement, thereby invalidating William's consent to the surgery; and that defendant negligently misrepresented that amputation was not a possibility and that he had previously performed a total ankle replacement.

On appeal, plaintiffs contend that the trial court erred in (1) failing to grant a directed verdict on the issue of informed consent, or, alternatively, failing to instruct the jury that defendant had an obligation to inform of "special" risks associated with total ankle replacement; (2) allowing defendant to testify as to his custom and habit in informing his patients of risks inherent in knee and hip replacements; and (3) failing to direct a verdict for plaintiffs on the issue of negligent misrepresentation, or, alternatively, refusing to submit that issue to the jury.

I.

Plaintiffs' main contention of error on appeal concerns the trial court's application of the law on the issue of whether defendant's disclosure of the risks involved in a total ankle replacement was sufficient to allow William to give an informed consent to the operation.

Conflicting evidence was presented at trial as to what disclosures were made by defendant. Plaintiffs testified that defendant did not advise them of any risks associated with total ankle replacement and that when asked what would happen if the ankle did not work, defendant replied that the artificial parts would be taken out and the ankle would be fused. Defendant's nurse testified that defendant advised plaintiffs

of the risks of infection and loosening of the artificial parts, with the resultant possibility that the artificial parts would have to be removed and an ankle fusion performed. Defendant testified that he had no independent recollection of informing plaintiffs of any risks or dangers associated with total ankle replacement and that his office charts and notes contained no entries on this subject; however, defendant testified that it was his custom and habit before performing other total joint replacements, specifically knees and hips, routinely to inform patients of the risks of infection and of the possibility of failure of the artificial parts because of loosening, both of which would require the removal of the artificial parts and the fusion of the joint. Defendant testified that while he had no independent recollection of doing so, defendant believed he had informed plaintiffs of these risks in accordance with his custom and habit in similar situations.

Defendant also testified that, although he did not so advise plaintiffs, he was aware that (1) the risks vary depending on the particular joint being replaced, that he had no prior experience with ankle implants, and that the long range effects of this procedure were not known; (2) the introduction of artificial parts into the ankle creates a greater possibility of infection than an ankle fusion; and (3) if the artificial parts have to be removed because of infection, there is an increased possibility that a later ankle fusion might be unsuccessful.

These risks have been categorized by plaintiffs as "special risks" of total ankle replacement, and the risks of infection and loosening of the parts have been categorized as "general risks." It is plaintiffs' contention that to meet the requirements of the informed consent doctrine, defendant was required to inform them of the general risks involved in total ankle replacement, and, as a separate requirement, was also required to inform them of those special risks of which he was aware.

The basis of plaintiffs' interpretation of the law on this issue is *Mallett v. Pirkey*, 171 Colo. 271, 466 P.2d 466 (1970). There, one of the issues on appeal was whether the jury had been properly instructed on the law with respect to informed consent.

In ruling on the adequacy of the instructions in that case, the court stated:

"The instructions collectively state that a physician has the affirmative duty to inform a patient about to undergo surgery in a general way as to the procedures he will follow and the risks involved in those procedures; he also has a duty to inform a patient of any substantial risk of a procedure which he is to perform and of specific risks, if such risks are known or ought to be known by him."

Plaintiffs' contention on appeal here is that in commenting on the jury instructions in *Mallett*, the Court distinguished "any substantial risk" from "specific risks." [1]

In determining the merits of plaintiffs' contention, we initially assume for the purposes of this appeal that the term "special risks," which was used by plaintiffs both in the trial court and on appeal, is synonymous with the term "specific risks," which was used in *Mallett*. We find no significant difference between the two terms which would justify deciding this appeal on that basis.

*Mallett* dealt with a situation where the plaintiff was not only not informed of *any* risks relating to the medical procedure performed, but was not even informed that the procedure was to be used. The court made no attempt to define specific or substantial risks and did not discuss any distinction between the two. Under the facts of the *Mallett* case, any such distinction was not at issue because it was uncontroverted that no risks had been disclosed. Additionally, in *Mallett*, the court approved of the instructions given and those instructions referred only to substantial risks. The term specific risk was used by the court only in describ-

---

1. *Colo.J.I.* 15:16 (2d ed. 1980) adopted after the trial of this case also uses the expressions "the substantial risks" and "any special risks" in the same context as *Mallett* and cites *Mallett* and its progeny as its authority.

ing the significance of the instructions given. As a result, we find no distinction between substantial and specific risks indigenous to the holding in *Mallett* which supports plaintiffs' contention.

In *Mallett*, the court relied heavily on the reasoning of the Kansas Supreme Court in *Natanson v. Kline*, 186 Kan. 393, 350 P.2d 1093, *clarified*, 187 Kan. 186, 354 P.2d 670 (1960). In its opinions in that case, the Kansas Supreme Court stated that the scope of a physician's duty to inform is defined by "those disclosures which a reasonable medical practitioner would make under the same or similar circumstances." *Natanson v. Kline*, 186 Kan. at 409, 350 P.2d at 1106. We find no language in *Natanson*, express or implied, regarding specific risks, or regarding any distinction between such risks and substantial risks.

Additionally, our review of the Colorado cases which followed *Mallett* has failed to disclose any basis for plaintiffs' contention. In both *Stauffer v. Karabin*, 30 Colo.App. 357, 492 P.2d 862 (1971), and *Martin v. Bralliar*, 36 Colo.App. 254, 540 P.2d 1118 (1975), the language of *Mallett* regarding substantial and specific risks was quoted; however, in neither case were specific risks either at issue or discussed.

Nor does plaintiffs' contention find support in the significant cases from other jurisdictions on the issue of informed consent. In *Goedecke v. State*, Colo., 603 P.2d 123 (1979), the Supreme Court noted that with respect to the doctrine of informed consent, Colorado has "merely followed the trend of modern cases. *See, e. g., Canterbury v. Spence*, 150 U.S.App.D.C. 263, 464 F.2d 772 (D.C. Cir. 1972); *Wilkinson v. Vesey*, 110 R.I. 606, 295 A.2d 676 (1972)." A review of these cases, as well as *Cobbs v. Grant*, 8 Cal.3d 229, 104 Cal.Rptr. 505, 502 P.2d 1 (1972), and *Scott v. Bradford*, 606 P.2d 554 (Okla.1979), produces no support for plaintiffs' contention that there are certain risks called special risks which a physician is required to disclose if they are known to him.

The next issue is the adequacy of the instructions given in the instant case. Here, the pertinent instruction stated:

"For a patient's consent to be effective, whether expressed or implied, the physician must have informed that patient as to the nature of the ailment, the nature of the operation, the alternative treatment available, if any, and the substantial risks if any, involved in undergoing the operation or the alternative treatment, to the extent that a reasonable medical practitioner would have done under the same or similar circumstances."

This instruction, which reflects the language of *Caro v. Bumpus*, 30 Colo.App. 144, 491 P.2d 606 (1971), was followed by an instruction which stated:

"A substantial risk is one which a physician knows or ought to know would be significant to a reasonable person in the patient's position in deciding whether or not to submit to a particular medical treatment or procedure."

■ Given this definition of substantial risk, we find neither justification nor need for a separate category of risks, whether they be denominated special or specific. If a risk, whether it be a general risk endemic to any operation or surgical procedure or whether it be a specific risk peculiar to the procedure in question, is one which potentially could affect the patient's decision on whether to allow the treatment, then it would fall under the category of substantial risks as defined by the instruction given. This definition adequately delineates the limits of the physician's duty to inform. Therefore, we rule that for the purposes of the informed consent doctrine, specific risks are by their nature included within the definition of substantial risks as defined in this case. Hence, where an appropriate definition of substantial risks is given, there is no requirement that a jury be separately instructed on specific risks.

■ In light of this ruling, we find no merit in plaintiffs' contention that they were entitled to a directed verdict on the issue of informed consent. Here, plaintiffs put on evidence regarding risks associated with total ankle replacement and they testified that they had not been informed of these risks. Defendant presented evidence

to the effect that plaintiffs were informed of some risks, and that his failure to inform of the remaining risks conformed with community medical standards. *See Hamilton v. Hardy*, 37 Colo.App. 375, 549 P.2d 1099 (1976). Under these circumstances, the trial court was correct in submitting to the jury (1) the disputed factual issue of whether plaintiffs were informed of any risks; (2) the issue of whether any risks of which plaintiffs were not informed were substantial risks; and (3) the issue of whether any failure to disclose by defendant conformed with community medical standards. *See Mudd v. Dorr*, 40 Colo.App. 74, 574 P.2d 97 (1977).

### II.

■ Plaintiffs also contend that the trial court erred in allowing defendant to testify as to his custom and habit in informing patients of risks inherent in knee and hip replacements, in order to show that he acted in conformity with this practice in advising plaintiffs of the risks inherent in a joint replacement operation. We disagree.

Although it was not in effect at the time of this trial, Colorado has now adopted *Colorado Rules of Evidence* 406, which permits the introduction of evidence of the habit of a person to prove that the person's conduct on a particular occasion was in conformity with that habit. If this case were remanded for a new trial, Rule 406 would be applicable, and, because the testimony of defendant related to the risks associated with joint replacement operations in general and not ankle replacements specifically, the testimony regarding custom and habit which was admitted during trial would also be admissible in a new trial. For this reason, as well as because defendant's testimony regarding custom and habit was corroborated by defendant's nurse's testimony that defendant in fact acted in conformity with his custom and habit on the specific occasion in question, we find no reversible error in the trial court's ruling on the admissibility of this evidence.

### III.

Plaintiffs also contend that the trial court erred in not directing a verdict, or alternatively, in not instructing the jury on the issue of negligent misrepresentation. We disagree.

This court has adopted the tort of negligent misrepresentation as set forth in *Restatement (Second) of Torts* § 552 (1976) where a pecuniary loss is involved. *First National Bank v. Collins*, Colo.App., 616 P.2d 154 (1980). Colorado has not adopted *Restatement (Second) of Torts* § 311, however, which deals with "Negligent Misrepresentation Involving a Risk of Physical Harm," and which plaintiffs contend is applicable to this case.

■ Under the circumstances of this case, any actions by defendant which would constitute negligent misrepresentation fall under the doctrines of either informed consent or medical malpractice, both of which are recognized in this state. Adequate instructions were submitted to the jury on these two doctrines. Thus, we do not address the issue of which, if any, subsections of § 311 are the law in Colorado. We find no error in the trial court's refusal to instruct on this issue because instructions based on § 311 would have been redundant.

Judgment affirmed.

SMITH and STERNBERG, JJ., concur.