Lawrence N. GORAB, M.D., Petitioner,

v.

Daniel C. ZOOK, Respondent.

No. 96SC90.

Supreme Court of Colorado,
En Banc.

June 30, 1997.

Rehearing Denied Aug. 8, 1997.

Kennedy & Christopher, P.C., Elizabeth A. Starrs, John R. Mann, Denver, for Petitioner.

Daniel C. Zook, Colorado Springs, Pro Se.

Justice SCOTT delivered the Opinion of the Court.

We granted certiorari to review the judgment of the court of appeals in *Zook v. Gorab,* No. 93CA0886, slip op. (Colo.App. Sept. 28, 1995) (not selected for official publication).[1] In *Zook v. Gorab,* the court of appeals reversed the trial court's ruling granting a directed verdict for a physician on a claim for lack of informed consent in a medical malpractice action. Because we conclude that the plaintiff did not produce sufficient evidence by which a jury might conclude that the physician's failure to inform fell below the medical community's standard of care, we reverse the judgment of the court of appeals.

## I.

In May 1987, petitioner, Lawrence N. Gorab, M.D. (Dr. Gorab), treated respondent, Daniel C. Zook (Mr. Zook), for prostatitis, a condition caused by the inflammation of the prostate gland. Dr. Gorab prescribed a sulfa antibiotic drug known commercially as Septra, which cured Mr. Zook's condition almost immediately. However, during the time he was taking the drug, Mr. Zook experienced fevers, chills, fatigue, and muscle aches. On June 1, 1987, several days after Mr. Zook stopped taking the drug, he experienced a spell resembling a grand mal seizure, which Mr. Zook alleges was caused by an adverse reaction to Septra.

The parties dispute certain facts in the case. For example, Dr. Gorab testified that when he prescribed Septra for Mr. Zook's prostatitis on the initial visit of May 15, 1987, he informed Mr. Zook of the "usual risks and precautions" of the drug, including the risk of fever, rash, headaches, nausea, kidney stones, and hepatitis. In contrast, Mr. Zook denies that Dr. Gorab informed him about any risks other than nausea and kidney stones. Both courts below found and the parties agree, however, that Dr. Gorab did not warn Mr. Zook about the possibility of seizures from the use of Septra.

In addition, there is conflicting testimony regarding when Mr. Zook informed Dr. Gorab that he was experiencing adverse side effects from the drug. Mr. Zook claims that he and/or his wife told Dr. Gorab that he was experiencing flu-like symptoms some time between his initial visit on May 15, 1987, and his second visit on May 22. Mr. Zook further claims that he tried unsuccessfully to contact Dr. Gorab on May 23, 24, or 25, and that he told Dr. Gorab on May 26 that he had a body temperature of 102 degrees.

Dr. Gorab, on the other hand, claims that he noted a full respiratory infection during Mr. Zook's initial visit on May 15 and that he did not have contact with either Mr. Zook or his wife between May 15 and May 22. Additionally, Dr. Gorab asserts that his examination of Mr. Zook on May 22 indicated that he was handling the medication well and was not experiencing any adverse reactions. Dr. Gorab also denied that Mr. Zook contacted him between May 22 and May 25. Rather, Dr. Gorab claims that his next contact with Mr. Zook was on May 26, when he indicated he had various flu-like symptoms.

Mr. Zook filed this medical malpractice action, claiming that Dr. Gorab was negligent in failing to advise him to stop taking Septra after he began having an adverse reaction. Mr. Zook also argued at trial that Dr. Gorab had not properly obtained his informed consent[2] before administering the Septra because he had not informed Mr. Zook of the possibility of seizures.[3] Mr. Zook's informed

1. Our order granting certiorari raised the following issues:

(1) Whether the court of appeals erred in reversing the trial court's directed verdict, thereby holding that a physician has a continuous duty to obtain informed consent from a patient during the course of administering medication; and

(2) Whether the court of appeals erred in holding that reversal of the directed verdict on the plaintiff's informed consent claim also requires a new trial on the negligence claim.

2. Although Mr. Zook did not specifically include a claim for lack of informed consent in either the complaint or the amended complaint, the trial court nevertheless allowed him to pursue this theory at trial.

3. The basis for damages at trial was the seizures suffered by Mr. Zook. The failure to warn claim is therefore necessarily limited to Dr. Gorab's

consent claim also alluded to Dr. Gorab's failure to inform him of the possible risks of continuing to take Septra after Dr. Gorab learned of Mr. Zook's flu-like symptoms.

At trial, Mr. Zook's expert witness, Stanley M. Phillips, M.D. (Dr. Phillips), testified that, in his opinion, Dr. Gorab had not met the requisite standard of care in his treatment of Mr. Zook and was therefore negligent. However, Dr. Phillips did not testify that Dr. Gorab was required under the relevant standards of the medical community to inform Mr. Zook of the risk of seizure before prescribing the drug. In contrast, Dr. Gorab's expert witness, Richard Augspurger, M.D. (Dr. Augspurger), testified that the risk of seizure from Septra was insubstantial and, therefore, under the applicable standards of the medical community, Dr. Gorab was not required to inform Mr. Zook of that risk before prescribing the drug.[4]

After the close of the evidence at trial, Dr. Gorab moved for a directed verdict on the issue of informed consent, arguing that Mr. Zook had failed to rebut the expert testimony that Dr. Gorab had properly obtained Mr. Zook's informed consent before prescribing Septra. The trial court directed a verdict for Dr. Gorab on the informed consent claim, ruling that he had met the necessary standard of care despite not disclosing the risk of seizure before prescribing the medication. The court then submitted the general negligence claim to the jury and the jury returned a verdict in favor of Dr. Gorab.

Mr. Zook appealed and the court of appeals reversed the trial court's directed verdict. The court of appeals held that the conflict between the parties' version of events relieved Mr. Zook of his burden of present-ing expert testimony to rebut Dr. Gorab's evidence that, under the standards of the medical community, he was not required to disclose the risk of seizure associated with Septra. *See Zook,* slip op. at 4. Additional-ly, the court of appeals determined that "the factual issues concerning [Mr. Zook's] lack of informed consent claim were inextricably in-terwoven with those concerning his negli-gence claim." *Id.* The court therefore or-dered a new trial for both the informed consent claim and the negligence claim.

## II.

Dr. Gorab argues that the court of appeals erred in reversing the directed verdict based on the informed consent claim because Mr. Zook failed to meet his burden of rebuttal under that claim. Moreover, Dr. Gorab as-serts that, by so holding, the court of appeals implicitly and erroneously concluded that a physician has a continuous duty to inform a patient of possible side effects during the administration of medication. We agree.

## A.

▇ In ruling on a motion for a directed verdict, a trial court must view the evidence and inferences in the light most favorable to the party against whom the motion is direct-ed. *See Bloskas v. Murray,* 646 P.2d 907, 912 (Colo.1982). A motion for directed ver-dict should not be granted unless the evi-dence compels the conclusion that a reason-able factfinder could not disagree and that no evidence or inference has been presented at trial upon which a verdict against the moving

---

failure to warn of the possibility of seizures. Mr. Zook now argues as a basis for his lack of in-formed consent claim that Dr. Gorab failed to warn him about the risk of hepatitis and other side effects. However, because this claim is not based on the damages asserted at trial, we will not address it. Our review of the lack of in-formed consent claim is therefore limited to Dr. Gorab's failure to warn Mr. Zook of the possibili-ty of seizures.

4. In response to a question whether the applica-ble standard of care required that a physician advise a patient of the risk of seizure, Dr. Aug-spurger testified that "I would not inform [a patient] of the seizure, and have not in my 18 years of practice of urology. I have never had or seen a patient who has a seizure from that. That would be very rare to inform a patient about."

In addition, another expert medical witness, Mario Oliveira, M.D., testified as follows:
The seizures were not produced by any medi-cation. That is extremely rare, something like 0.8 percent in a study conducted in Boston of over 31,000 patients ... and the studies con-ducted in 1977 showed that only 1.5 percent of the patients had seizures following exposure to medication....

party could be sustained. *See Fair v. Red Lion Inn,* 943 P.2d 431, 436–437 (Colo.1997).

Under our precedent, a general claim for negligence in medical treatment arises when a physician's care falls below the degree of knowledge, skill, and care used by other physicians practicing the same specialty. *See Bloskas,* 646 P.2d at 914. Colorado Jury Instruction 15:2 states that "[a] physician is negligent when the physician does an act which a reasonably careful physician would not do or fails to do an act which a reasonably careful physician would do." CJI–Civ.3d 15:2. For example, as pertinent here, a physician may be liable for negligence if a particular medication is not discontinued after the patient complains of adverse effects and the medical community's standard of care would require that a physician discontinue that treatment. *See generally Bowman v. Songer,* 820 P.2d 1110 (Colo.1991); *Melville v. Southward,* 791 P.2d 383 (Colo.1990).

In contrast, a claim for negligence based on lack of informed consent is a separate claim, based on the information communicated by a physician to a patient before a particular procedure or treatment is commenced. *See, e.g., Bloskas,* 646 P.2d at 912; *Mallett v. Pirkey,* 171 Colo. 271, 282, 466 P.2d 466, 471 (1970). Colorado Jury Instruction 15:15 provides that "[i]n order for the plaintiff to recover from the defendant on [a] claim of negligence based on lack of informed consent ... the defendant [must have] negligently failed to obtain the plaintiff's informed consent *before* [the medical treatment]." CJI–Civ.3d 15:15 (emphasis added). Similarly, Colorado Jury Instruction 15:16 provides that *"[b]efore* a physician [treats] ... a patient, the physician must obtain the informed consent, whether express or implied, from the patient." CJI–Civ.3d 15:16 (emphasis added).

Although it is unrealistic to require that a physician advise his or her patient of all conceivable risks of a particular procedure or treatment, *see Stauffer v. Karabin,* 30 Colo.App. 357, 363–64, 492 P.2d 862, 865 (1971), we have recognized that where the risk is one that would be medically significant to the patient's decision, and the risk is known or ought to be known by the physician, then it is a "substantial" risk and should be disclosed to the patient, *see Bloskas,* 646 P.2d at 913 & n. 6 (relying on *Mallett,* 171 Colo. at 282, 466 P.2d at 471). Further, the substantiality of a particular risk must be determined on the basis of expert testimony. *See id.* at 914 ("The precise scope of the physician's duty of disclosure is determined on the basis of expert testimony demonstrating the extent of information given by reasonably careful physicians practicing the same specialty in the same or similar community."); *see also United Blood Servs. v. Quintana,* 827 P.2d 509, 520 (Colo.1992) ("Because in most cases of professional negligence the applicable standard is not within the common knowledge and experience of ordinary persons, the applicable standard must be established by expert testimony.").

A claim for lack of informed consent involves a series of shifting burdens. First, the patient must establish a *prima facie* case by demonstrating that he or she was uninformed at the time of consent due to a failure to disclose by the physician. *See Martin v. Bralliar,* 36 Colo.App. 254, 258, 540 P.2d 1118, 1120 (1975); *see also Melville v. Southward,* 791 P.2d 383, 387 (Colo.1990). Once there is evidence that a patient was uninformed because of nondisclosure, the burden then shifts to the physician to go forward with expert testimony showing that the nondisclosure conformed with community, or where appropriate, national medical standards of care.[5] *See Mallett,* 171 Colo. at

5. As noted above, expert testimony in medical malpractice actions is necessary to determine the standards of professional care and competence which define the concept of reasonableness appropriate to adjudication of such disputes. *See Bloskas,* 646 P.2d at 914; *Greenwell v. Gill,* 660 P.2d 1305, 1307 (Colo.App.1982). "This principle acknowledges the practical problems faced by fact-finders in seeking to apply an objective

test of 'reasonable conduct' to the sphere of medical activity." *Greenwell,* 660 P.2d at 1307.

However, in some contexts of medical malpractice actions, expert testimony is not required. For example, a plaintiff alleging lack of informed consent does not necessarily have to present expert testimony to establish his or her claim. The duty of care in such cases arises from the general principle of full disclosure,

282, 466 P.2d at 471; *Martin,* 36 Colo.App. at 256, 540 P.2d at 1120; *Stauffer,* 30 Colo.App. at 364, 492 P.2d at 865. This burden refers to the burden of production or going forward with evidence, rather than to the ultimate burden of proof.

■ Finally, if the physician produces competent expert opinion of compliance with the applicable medical standards, the burden then shifts back to the patient to present evidence that the physician's failure to inform fell below the medical community's standard of care. *See Mallett,* 171 Colo. at 282, 466 P.2d at 471; *Conrad v. Imatani,* 724 P.2d 89, 92 (Colo.App.1986). If the patient is able to meet this burden and create a disputed factual question, the claim for lack of informed consent should go to the jury. *See Bloskas,* 646 P.2d at 912; *Mallett,* 171 Colo. at 282, 466 P.2d at 471. However, if there is no dispute, and the court viewing the evidence in the light most favorable to the party against whom the motion is directed can rule on the question as a matter of law, a directed verdict is appropriate. *See Bloskas,* 646 P.2d at 912; *Conrad,* 724 P.2d at 92.

### B.

■ Here, it is undisputed that, prior to prescribing Septra, Dr. Gorab did not disclose to Mr. Zook the risk of seizure as an adverse side effect. It is also undisputed that Mr. Zook suffered a seizure, which he contends resulted from his use of Septra. Mr. Zook therefore established a *prima facie* case of lack of informed consent and the burden shifted to Dr. Gorab to demonstrate that under the circumstances, his failure to warn complied with applicable medical standards.

Dr. Gorab met his burden by presenting the expert testimony of Dr. Augspurger, who testified that seizures suffered as a result of taking Septra are extremely rare and, as such, a reasonable urologist would not need to inform patients of that possibility. Thus, Dr. Augspurger testified that Dr. Gorab's disclosure, which did not include a warning about seizures, conformed sufficiently to the medical community's standard of care.

Under the burden shifting framework set forth above, Mr. Zook was then required to rebut Dr. Augspurger's testimony with expert testimony of his own, thereby creating a disputed factual question for the jury to resolve. The record reveals, however, that Mr. Zook failed to present any testimony from a medical expert that the warning given by Dr. Gorab when he prescribed Septra did not comport with the applicable standard of care in the medical community. Although Mr. Zook's expert witness, Dr. Phillips, testified that Septra is a commonly prescribed antibiotic, he did not express any opinion that reasonable physicians informed their patients that the administration of Septra may result in seizures.

Rather, Dr. Phillips testified that Dr. Gorab was negligent in not recognizing Mr. Zook's flu-like symptoms and thus failed to meet the appropriate medical standard when he did not eventually remove Mr. Zook from the medication. That evidence, however, creates a question of fact only as to Dr. Gorab's general negligence, a claim which the trial court properly submitted to the jury. Dr. Phillips stated that, in his opinion, Dr. Gorab, after being informed that Mr. Zook was having an adverse reaction to Septra, should have diagnosed his condition as a drug reaction, stopped treatment with Septra and substituted another drug, and brought him in for further examination and tests. However, that testimony related only to Dr. Gorab's duties and obligations during the course of treatment, and not to his initial duty to disclose the possible risks and side effects of treatment.

As to the initial disclosure by Dr. Gorab, Dr. Phillips testified only that it would have been "good medical practice" to advise Mr. Zook of the possible side effects and risks of Septra. He never explained, however, what those possible side effects and risks are or

---

which is a principle not peculiar to any one profession. *Id.* Thus, in establishing a *prima facie* case, a plaintiff need not present expert testimony, only demonstrate that the physician failed to disclose information. In contrast, ex-

pert medical testimony is necessary to establish the defense of conformance with standards of professional practice or the failure to meet such standards. *Id.*

how they differed, if at all, from the risks and side effects noted by Dr. Gorab when he initially prescribed the antibiotic. Importantly, Dr. Phillips did not testify about the standards in the medical community, or Dr. Gorab's success or failure in meeting those standards.

The court of appeals correctly noted that Dr. Gorab's expert testified that the standard of care did not require him to inform Mr. Zook that a seizure was a possible reaction to the medication. *See Zook,* slip op. at 3. The court was concerned, however, that "this testimony was all predicated on [Dr. Gorab's] version of the events. There was no expert testimony presented by [Dr. Gorab] that was based on [Mr. Zook's] rendition of the facts." *Id.* The court then quotes testimony from Dr. Phillips, which it determines supports the conclusion that Mr. Zook adequately addressed the applicable standard of care and Dr. Gorab's failure to satisfy it.

In our view, the court of appeals takes Dr. Phillips' testimony out of context and misapplies it. For example, in response to a general question regarding the standard of care "with regard to the monitoring of drugs and watching for drug reaction," and whether that standard differs from one medical specialty to another, Dr. Phillips stated and the court of appeals quotes the following:

> [T]here are certain levels [of disclosure of side effects] that are true for any physician that prescribes prescriptions and drugs, and it doesn't matter whether what specialist it is or what state it is, including this state .... the standard of careful administration and monitoring apply to any specialty, in any state.

*Zook,* slip op. at 3.

The bracketed material in the above quotation was specifically added by the court of appeals and does not accurately reflect the substance of Dr. Phillips' testimony. The record reveals that Dr. Phillips was responding to general questions regarding whether the standard of care in "the monitoring of drugs and watching for drug reaction" varied among specialties, which was directed towards Mr. Zook's negligence claim and not his informed consent claim. Moreover, this portion of the testimony was preliminary in

nature and apparently designed to qualify Dr. Phillips as an expert witness. Indeed, at this stage of the testimony, there was no discussion pertaining specifically to Dr. Gorab's actions in either disclosing the side effects or monitoring Mr. Zook's drug reactions.

Similarly, the court of appeals improperly relies on Dr. Phillips' subsequent testimony that "[i]f [Mr. Zook's] rendition of the dates and the times and what he communicated to the doctor are accurate, [Dr. Gorab's] response was not appropriate." *Id.* Again, however, Dr. Phillips' testimony supported Mr. Zook's *negligence* claim against Dr. Gorab based on his alleged failure to monitor and respond to the continued administration of Septra. This portion of Dr. Phillips' testimony did not address the initial disclosure of risks and side effects made by Dr. Gorab when prescribing the drug. Thus, the testimony on which the court of appeals relies in support of its conclusion that "a genuine issue of fact remains" is in no way related to Mr. Zook's lack of informed consent claim.

Our review of the record reveals that Dr. Phillips testified in very general terms about Dr. Gorab's initial disclosure to Mr. Zook. He testified:

> I don't think that there was, at least based on the medical reports or Mr. Zook's testimony, much of a discussion in terms of possible side effects, what to expect, exactly why the drug was being taken, these sorts of things, which I think are good and necessary in talking with the patient, so the patient knows what is happening and what to expect.

This testimony is too vague to satisfy Mr. Zook's burden of rebutting Dr. Augspurger's very specific testimony that seizures as a result of taking Septra are very rare and that, under the applicable standards of care, Dr. Gorab was not required to warn Mr. Zook.

In our view, stating that there was not "much of a discussion in terms of possible side effects" does not refute Dr. Augspurger's testimony as to the applicable standards of care in the medical community. Thus, Mr. Zook offered no expert opinion on

whether Dr. Gorab's failure to inform him of the possibility of seizure or other side effects deviated from applicable standards of the medical community. Rather, the substance of Dr. Phillips' testimony was that Dr. Gorab was negligent in failing to evaluate and treat Mr. Zook after he began experiencing flu-like symptoms.

As a result, there was no factual dispute as to the failure to disclose and, on this record, the trial court could and did determine as a matter of law that Dr. Gorab's initial warning to Mr. Zook, which omitted warnings as to seizures, conformed to applicable medical standards and was therefore reasonable. Thus, we conclude that, viewing the evidence in the light most favorable to Mr. Zook,[6] the trial court properly directed a verdict in favor of Dr. Gorab and against Mr. Zook on the claim for lack of informed consent.

### C.

■ In addition, to the extent that Mr. Zook argues[7] or the court of appeals' opinion suggests a continuing duty to inform, we reject that view. A claim for lack of informed consent is based on the information communicated by a physician to a patient *before* a particular procedure or treatment is commenced. *See, e.g.,* CJI–Civ. 15:15, 15:16; *Bloskas,* 646 P.2d at 912; *Mallett,* 171 Colo. at 282, 466 P.2d at 471. Thus, once informed consent has been obtained prior to treatment, a physician is under no duty to continue warning the patient of possible side effects during the continuing course of that treatment.

■ We do recognize, however, that where a new, previously undisclosed, and substantial risk arises, there may be an additional and independent duty to warn by the physician. For example, Mr. Zook hypothe-

sizes a situation in which a physician prescribes a drug and later learns from the manufacturer of a new and material danger in its use. Similarly, Mr. Zook presents a hypothetical involving a physician who prescribes medication to a woman who he later learns is pregnant. We agree that, in situations such as these, a physician may have a duty to disclose certain risks to the patient. However, that duty clearly is not a previously existing one, but rather is a new duty based on changed circumstances.

■ Here, no such changed circumstances exist. Although Mr. Zook developed flu-like symptoms, there was no reason, based on the testimony presented in the record, for Dr. Gorab to advise Mr. Zook at that time about the risk of seizure. Rather, Dr. Gorab's actions during the course of Mr. Zook's treatment were the basis of Mr. Zook's negligence claim and not part of the lack of informed consent claim. Indeed, the doctrine of informed consent was developed in connection with a patient's consent to specific surgical procedures so as to avoid a physician's liability for battery, making the doctrine ill-suited to a claim based on the administration of medication over a course of time, which is better suited to a claim based upon a negligence theory of liability.

■ Thus, the continued use of medication for which the physician has already provided sufficient warnings, without any significant change in circumstance which would cause a risk to become substantial, is not a basis for a lack of informed consent claim. Because there was no testimony presented here that the nature of the risk of seizure from Septra changed or materially increased while Mr. Zook was taking the medication, Dr. Gorab was under no new duty to disclose. Mr. Zook's claim against Dr. Gorab and the

---

6. The court of appeals was concerned with the trial court's statement that it did not review the motion for directed verdict in the light most favorable to Mr. Zook. We conclude that based on any rendition of the facts, and viewed in the light most favorable to either Mr. Zook or Dr. Gorab, the failure to warn of the risks of seizures when prescribing Septra was reasonable because there was no expert testimony to the contrary. Thus, any error by the trial court was harmless and is not dispositive here.

7. Mr. Zook's tendered jury instructions specifically referred to Dr. Gorab's negligence in failing "to inform the plaintiff of the risks and complications associated with the continued use of Bactrim/Septra." Further, at oral argument before this court, Mr. Zook answered affirmatively when asked if he was contending that there was an informed consent claim that ran alongside the negligence claim during the course of treatment.

evidence presented in support effectively allege a failure to diagnose properly, rather than a failure to disclose a substantial risk. We therefore reject Mr. Zook's argument that Dr. Gorab had a continuing duty to warn.

## III.

In sum, we conclude that the trial court properly entered a directed verdict in favor of Dr. Gorab on the lack of informed consent claim. Under the shifting burden framework, Dr. Gorab satisfied his burden by presenting expert testimony that his failure to disclose the risk of seizure from Septra, either at the time it was prescribed or during the continuing course of treatment, was reasonable under the standards of the medical community. Mr. Zook, however, presented no expert testimony to the contrary and, as such, no question of fact remained and a directed verdict was appropriate.

Accordingly, we reverse the judgment of the court of appeals and remand to that court for reinstatement of the jury verdict.